[Civ. No. 11850. Second Appellate District, Division One.—September 29, 1939.]

RICHARD R. ADAMS COMPANY, INCORPORATED (a Corporation), Appellant, v. PACIFIC STATES SAVINGS AND LOAN COMPANY (a Corporation) et al., Respondents.

John C. Campbell, Franz R. Sachse and Baldwin Robertson for Appellant.

Mace & Tuthill for Respondents.

DORAN, J.—This is an appeal by plaintiff from a judgment in favor of the defendant and respondent, Pacific States Savings and Loan Company, a corporation.

Appellant sets forth generally, but completely, the status of the parties as follows: "Plaintiff brought the action as assignee of twenty-six separate assigned claims, plaintiff's assignors being hereinafter referred to as the 'home owners'. The complaint alleges twenty-six separate causes of action which are pled as common counts for money had and received.

"The answer of the defendant Pacific States Savings and Loan Company is in the nature of a general denial.

"Each of plaintiff's several causes of action seeks to recover the amount of money payment admittedly received by the respondent from an assignor home owner in connection with the refinancing of an obligation held by respondent and secured by an encumbrance upon the home of the home owner through recourse to the benefits of the Home Owners' Loan Act, enacted by the Congress in 1933, for the relief of distressed home owners. (Home Owners' Loan Act of 1933 as Amended, 12 U. S. C. A. Sec. 1463 et seq., 48 Stats. 128.)

"It was stipulated and agreed at the time of the trial that the determinative issue of law was whether or not the payments made by plaintiff's assignors were legally demanded

and received by the defendant. It was agreed that if the payments were unlawfully exacted and received, plaintiff was entitled to a judgment for the recovery thereof.

"It was, and is, the theory of plaintiff and appellant that the payments so exacted by the respondent were taken and received wrongfully and in violation of the provisions and purposes of the Home Owners' Loan Act, involving, among other things, violations of provisions of said Act, carrying criminal penalties; further it was, and is, the theory of plaintiff that the payments so exacted from the home owners were and are without any legal consideration and that respondent, in receiving such wrongfully and illegally exacted payments, became, and now is, a constructive trustee thereof for the benefit of the home owners who made the payments.

"On the other hand, it was the theory of the defendant, which was followed by the trial court, that the Home Owners' Loan Act did not inhibit or make illegal such separate and collateral exactions of payments from the home owners, even though such exactions were incidental to refinancing under the procedure prescribed by the Home Owners' Loan Corporation which required the filing by the respondent, as mortgagee, of consents to take Home Owners' Loan Corporation bonds in specific designated amounts and in full satisfaction of its obligations, the precise amounts of which were in all cases required to be represented to the H. O. L. C.

"It was the theory of respondent, which was adopted by the trial court, that, in the absence of proof of the elements of fraud and deceit by respondent against the home owners, the exacted payments were neither illegal nor recoverable. In other words, it was the theory of the court below that only upon the basis of fraud and deceit in the inducement could the exactions of the payments be held illegal.

"At the conclusion of the trial, the court below announced its decision expressly predicated upon the theory, as stated, that plaintiff could not recover in the absence of proof of the elements of fraud in the inducement or procurement of the exacted payments. Judgment was, therefore, ordered in favor of defendant Pacific States Savings and Loan Company, and it is from the judgment thereafter entered in favor of defendant that this appeal is taken, plaintiff's motion for a new trial having been regularly made and by the court below denied."

Inasmuch as each cause of action is based upon practically an identical state of facts, the following detailed example of one of the transactions, as recited in appellant's brief, is typical of all and is as follows: "Plaintiff's assignor, Mrs. Frances Bell, owned a home in Long Beach, California, which was encumbered with a deed of trust securing an obligation held by respondent Pacific States Savings and Loan Company. On the 26th day of May, 1934, the balance owing upon this obligation, according to respondent's statement as of that date, was $12,603.61.

"Mrs. Bell was in default in her payments upon said obligation and respondent was threatening foreclosure proceedings. Accordingly, she made application to the H. O. L. C. for a refinancing loan. In connection with this application, and pursuant to the usual procedure of the H. O. L. C. in such cases, respondent filed its 'Demand' dated May 26, 1934. This 'Demand' itemized the amount due upon the obligation of Mrs. Bell, and, including principal, interest, taxes, costs, and all other charges, it totaled the sum of $12,603.61.

"At the same time, respondent also filed with the H. O. L. C. its 'Mortgagee's Consent to Take Bonds', dated May 26, 1934, wherein respondent represented the unpaid balance upon Mrs. Bell's obligation to be in the figure above mentioned, and wherein respondent expressed its agreement to accept H. O. L. C. bonds in the amount of its 'Demand' as stated.

"After making its appraisal, the H. O. L. C. advised the respondent that it would not loan to exceed approximately $4,800 for the purpose of refinancing the obligation of Mrs. Bell, owing to respondent. In the latter part of July, or the first part of August, 1934, Mrs. Bell had a conversation in the office of the defendant company with Mr. F. A. Wright, an officer and director of the company. In this conversation, Mr. Wright informed Mrs. Bell that $4,800 was all that the H. O. L. C. would provide for the purpose of refinancing her obligation; that respondent would not accept that amount; that she must raise an additional $1,000 or they would reject the H. O. L. C. proposal and would proceed to foreclose their deed of trust upon her home.

"Mrs. Bell was finally told by Mr. Wright that if she would pay $500 in cash and would give her note for $500, respondent would accept the bonds of the H. O. L. C. in the amount offered. Accordingly, Mrs. Bell went out and borrowed $500 for payment to respondent as demanded.

"Thereafter, and on or about August 3, 1934, and the next day or so after her first conversation with Mr. Wright, Mrs. Bell, having raised the necessary $500, returned to the office of the respondent company and delivered the cash to Mr. Wright and at the same time signed a promissory note for an additional $500. Mr. Wright thereupon gave Mrs. Bell the following receipt:

" 'PACIFIC STATES SAVINGS AND LOAN COMPANY—ESTABLISHED 1889

" 'August 3, 1934.

" 'RECEIVED OF FRANCES BELL, her note in the principal sum of $500.00 together with the sum of $500.00 which represents a total of $1,000 as full adjustment on her Home Owners' Loan application.

" 'If for any reason the Home Owners' Loan is not closed, this note and cash received will be returned to Mrs. Bell.

" 'Pacific States Savings and Loan Company

" '(Signed) F. A. Wright,

" 'Vice-President.'

"The $500 cash so received by Mr. Wright from Mrs. Bell was placed in a separate account. It was not credited or applied upon Mrs. Bell's obligation. It was entered in a special ledger, referred to at the trial as a 'conditional or provisional ledger'. It was not until after the H. O. L. C. financing was consummated, and after the receipt by respondent of its H. O. L. C. bonds, that this $500 was transferred from the 'provisional' ledger account to the Central Loan Department for application to Mrs. Bell's account on the general books of the company.

"After receipt of the $500 cash and the $500 note from Mrs. Bell, respondent filed with the H. O. L. C. its further 'Mortgagee's Consent to Take Bonds', substantially the same in substance and form as that which appears in the case of McAllister v. Drapeau, (Cal. App.) 85 Pac. (2d) 523 (December 15, 1938); idem 14 Cal. (2d) 102 [92 Pac. (2d) 911]).

"It is particularly pointed out that the foregoing instrument did not disclose the receipt of either the $500 cash or the $500 note, nor were these payments in any wise reflected by any reduction in the statement of the balance asserted to be due and owing to respondent upon Mrs. Bell's obligation.

"Subsequently, respondent filed another 'Mortgagee's Consent to Take Bonds', bearing date the 10th day of September, 1934.

"The important feature of this last-filed 'Consent' is that it shows an increase in the balance due upon Mrs. Bell's obligation over that previously asserted; the increase resulting, evidently, from further accrual of interest. It does not reveal any reduction or credit on account of the payment of the $500 cash, or the $500 note theretofore received from Mrs. Bell. The essence of the last-filed 'Consent' was an agreement by respondent to accept a total of $4,859.71 in H. O. L. C. bonds in full satisfaction of an obligation upon which respondent represented to be then due and owing the sum of $12,817.95.

"This last-filed 'Consent' expressed respondent's agreement, provided the refunding could be consummated, 'to accept in full settlement of the claim of the undersigned the sum of $4,859.71, less bonds, taxes and escrow expense'. It did not say that respondent would accept said sum in bonds, plus $1,000 received from the applicant home owner in full settlement of its claim.

"On the same day, to wit: September 10, 1934, there was delivered to respondent by the H. O. L. C. an instrument denominated 'Authorization for Delivery of Bonds of Home Owners' Loan Corporation.' This instrument authorized delivery to respondent of H. O. L. C. bonds of a face value of $4,825.

"Thereafter, on November 15, 1934, respondent received out of escrow the $4,825 worth of H. O. L. C. bonds and cash, making a total in all of $4,859.71.

"On the following day, to wit, November 16, 1934, respondent caused to be transferred to its Central Loan Department, for application and credit on Mrs. Bell's loan ledger card, the sum of $500, representing the cash which respondent had received from her on August 3, 1934."

■ The issues herein involved can be disposed of briefly. Since the trial of the within action, the Supreme Court of California has held, in a sweeping decision involving similar controversies, that "The obtaining of secret second liens by the creditor violates the basic public policy expressed in the act. The act was intended solely for the benefit of home owners who were in financial difficulties—no one else was

eligible for its benefits. Any benefit to creditors was merely incidental. But if a creditor could lawfully exact a secret second lien from his debtor, in many cases this would confer the benefits of the act on the creditor rather than on the debtor." (*McAllister* v. *Drapeau,* 14 Cal. (2d) 102 [92 Pac. (2d) 911].)

The issue of fraud was not involved in the *McAllister* v. *Drapeau* case, *supra,* nor is it involved in the instant case, nor was there any finding in either case that the "second mortgage" financing, or secondary obligation, was so arranged that the home owner would not have a reasonable probability of being able to carry his first mortgage to the H. O. L. C. and also the second mortgage indebtedness or obligation. ▮ Nor was the H. O. L. C. a party to the action in the *McAllister* v. *Drapeau* case, *supra,* nor is such corporation a party to the action in the instant case. The Supreme Court in the *McAllister* v. *Drapeau* decision, *supra,* however, holds in disposing of the contention urged there as here that the H. O. L. C. is the only one that can raise the question of illegality, that "The corporation has presented its views in the action as an *amicus curiae,* and vigorously assails the legality of the transaction." Thus, the H. O. L. C. has become a party to the within action indirectly and by inference.

In an action involving similar issues disposed of by the District Court of Appeal, on the authority of the Supreme Court decision in the *McAllister* v. *Drapeau* case, *supra,* the court declared "Under the authority just referred to it must be held that the transaction involved in the instant case was illegal and void." (*Woods* v. *Kern County Mutual B. & L. Assn., ante,* p. 468 [93 Pac. (2d) 837] (Sept. 5, '1939).)

By virtue of said Supreme Court decision the judgment of the trial court in the within action must be and is, therefore, reversed.

York, P. J., and White, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 25, 1939, and an application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 27, 1939. Houser, J., did not participate.

# MEMORANDUM CASES.