[No. 30216. Department Two. August 18, 1947.]

WILLIAM R. BRYANT *et al., Respondents,* v. ALVINA V. STABLEIN *et al., Appellants.*[1]

[1]Reported in 184 P. (2d) 45.

*Ralph B. Potts,* for appellants.

*Simmons & McCann,* for respondents.

STEINERT, J.—The purchasers under a real estate contract brought suit to compel specific performance thereof by the seller and her husband. The cause was tried by the court without a jury, resulting in a decree establishing the legal title to the real estate in the seller as her sole and separate property and directing her to convey it to the plaintiffs in accordance with the terms of the contract. Both defendants have appealed.

Appellants, Alvina V. Stablein and Brimson G. Stablein, intermarried in 1921. Shortly thereafter, they purchased an unimproved tract of land located north of the city of Seattle and described as tract one in block ten of Matthews Sand Point Garden Tracts, in King county. This tract of land includes the real property involved in this action. Soon after the purchase of the tract, the couple built on the southerly end of it a house of two rooms, which they occupied as their home for the time being.

On May 10, 1923, Mr. Stablein conveyed by quitclaim deed all his interest in the entire tract to his wife as her sole and separate property. Thereafter, they erected on the southerly portion of the land, near the small house, a larger and more substantial dwelling consisting of four rooms, which they have occupied as their residence ever since. These houses were built with funds earned by the husband and, in part, by his own labor.

In July, 1945, Mrs. Stablein instituted an action for divorce from Mr. Stablein. On August 10th, they entered into a written property settlement agreement, wherein it was recited that it was no longer possible for them to live

together and therefore they had agreed to an adjustment and settlement of their property rights and would request the court to confirm such agreement if a decree of divorce were granted. We quote those provisions of the agreement which bear upon the subject of this controversy:

"1. That the First Party [Alvina V. Stablein] shall have set over to her as her sole and separate property the home of the parties hereto . . . legally described as:

" 'South ½ of Lot 1 in Block 10 Matthews Sand Point Garden Tracts, an unrecorded plat to the City of Seattle, King County, State of Washington with the exception of the South end of said tract or a piece of land 40' x 120' which said piece of land shall be set over to the defendant [Brimson G. Stablein] as his sole and separate property. .. . . '

"6. Each of the parties hereto promises and agrees with the other to make, execute and deliver all of the necessary Bills of Sale, releases, and any other instruments which are required to convey or pass title to the respective property herein mentioned to the other.

"7. The agreements herein contained are made by each of the parties hereto in full settlement of all claims and rights of every kind, nature and description which either party hereto may have against the other, now or hereafter, and in full for all rights and claims which either party would have upon the estate of the other, and is in lieu of all rights the law would give the other as wife or husband or as surviving wife or husband, and the property so received and so declared to be the property of the respective parties hereto shall forever remain the sole and separate property of each party as though each of said parties were sole and single. . . .

"9. *It is expressly understood and agreed that the transfer of title and interest in the respective properties, either real or personal, described in this agreement, shall take effect as of the date of the signing of this Property Settlement Agreement, it being the intent of the parties hereto that the title to the respective properties in the respective parties hereto shall be fixed as of that date and the change of the condition of either party or the death of either party shall in no way affect the same.* . . .

"In WITNESS WHEREOF the parties hereto have hereunto set their hands and seals this 10th day of Aug., 1945." (Italics ours.)

On September 19, 1945, an interlocutory order of divorce was awarded to the wife, confirming the property settlement. Shortly thereafter, Mrs. Stablein listed her portion of the real property with a real estate broker for sale at a price of sixty-four hundred dollars.

In the meantime, respondent William R. Bryant, a returned army veteran, and his wife, Deloris J. Bryant, were looking for a home which they might purchase, and in October, 1945, they learned that Mrs. Stablein's property was for sale. They made an offer to the real estate agent, but Mrs. Stablein declined to accept it. After some extended negotiations, the parties on November 10th arrived at an agreement, under which Mr. Bryant paid Mrs. Stablein five hundred fifty dollars and received from her a written instrument reading as follows:

"Mr. Wm. R. Bryant          Date:   Nov. 10-1945
1006 E. 40th
Seattle, Washington
Dear Sir:
"By acceptance of this five Hundred Fifty Dollars ($550.00) I hereby agree to consider this as a portion of the down payment necessary to purchase the following property of which I am the true and legal owner.

6600.00 price
750

─────

5850   —Bal. F.H.A.

I further agree to extend ninety days time for the consumation of this transaction, in consideration of $550.00 paid to me this day. At the end of the specified period if you are unable to complete purchase of the above property it is understood that I shall retain payment as rent or other considerations for my inconvenience in connection with this sale.

"The two (2) North lots of the ½ block in block 10 of Matthews Sand Point Garden Tract.

Witness Olga McNeill      Signed Mrs. A. V. Stablein"

Later that same day, or the next, Mrs. Stablein received a higher offer for the property and communicated that fact to the Bryants. The latter then increased their offer by two hundred fifty dollars, which Mrs. Stablein agreed to

accept. At the bottom of the foregoing instrument appear the following notations:

"Received from Deloris Bryant Five hundred & fifty 00/100 Dollars ($550.00).

"Received from Deloris Bryant Two Hundred & Fifty dollars ($250.00). 11/15/45 Alvina V. Stablein A.V.S."

On November 14, 1945, the Bryants and Mrs. Stablein entered into the written agreement which is now sought by respondents to be specifically enforced. The material provisions thereof read as follows:

"EARNEST MONEY RECEIPT<br>Seattle, Washington, November 14, 1945

"RECEIVED FROM William R. Bryant and wife, Deloris J. hereinafter called 'purchaser' FIFTY AND No/100 DOLLARS ($50.00) as earnest money in part payment of the purchase price of the following described real estate in King County, Washington:

"The South half of Lot One (1), less the South forty feet thereof, in Block Ten (10) of Matthews Sand Point Garden Tract unrecorded; and commonly known as 9223 42nd Avenue Northeast, Seattle, King County, Washington;

"Total purchase price is FIVE THOUSAND EIGHT HUNDRED AND No/100 DOLLARS ($5800.00), payable as follows:
"All cash at time of closing.

"Owner shall furnish purchaser, as soon as procurable and within —— days of date of acceptance of this offer, Washington Title Insurance Company's policy of title insurance or its title report evidencing condition of title. . . .

"The property is to be conveyed by good and sufficient deed, free of encumbrances except ............ None ............ . . .

"Possession At time of closing. . . .

"The sale shall be closed in office of agent within 15 days after title insurance policy or title insurance company's report is furnished by owner. The purchaser and the seller will, on demand of either, deposit in escrow with Washington Title Insurance Company all instruments and monies necessary to complete the purchase; . . .

William Robert Bryant<br>Purchaser.

Mrs. Alvina V. Stablein     Deloris J. Bryant
<br>      Seller.       Purchaser (wife or husband)"

It will be observed that the purchase price designated in this earnest money receipt was fifty-eight hundred dollars, whereas the price actually agreed upon between the parties, as indicated in the agreement of November 10th, was sixty-six hundred dollars.

At the time of these negotiations, it was understood between the parties that Mr. Bryant contemplated the financing of the purchase by procuring a portion of the money through a Federal housing administration (F.H.A.) loan and the balance through a so-called G.I. loan, under Title III of servicemen's readjustment act of 1944, amended by Public Law No. 268, 79th Congress. The servicemen's readjustment act provides, in part, that any loan made to a veteran under the act, the proceeds of which are to be used for purchasing residential property or constructing a dwelling to be used as his home, or for the purpose of making repairs, alterations, or improvements on property owned by him and occupied as his home, is "automatically guaranteed" if made pursuant to the provisions of the act, including the following:

"(3) That the price paid or to be paid by the veteran for such property or for the cost of construction, repairs, or alterations does not exceed the reasonable value thereof as determined by proper appraisal made by an appraiser designated by the Administrator." 36-38 U.S.C.A. (Sup.), § 694a.

"Reasonable value" is defined in the Federal regulations as that figure which represents the amount a designated appraiser, unaffected by personal interest or prejudice, would recommend as a proper price or cost to a prospective purchaser, whom the appraiser represents in a relationship of trust, as being a fair price or cost in the light of prevailing conditions. 11 Fed. Reg. 2119 (1946).

Pursuant to Mr. Bryant's application for such loan, the administrator caused an appraisement to be made of the property, in the sum of fifty-nine hundred dollars.

It is alleged in appellant's answer, as an affirmative defense, that Mr. Bryant paid her the five hundred fifty dollars and the two hundred fifty dollars, totaling eight hun-

dred dollars, as "side money" over and above the amount specified in the agreement, and that such payment was in excess of the appraisal made by the administrator and therefore in violation of the Federal regulations respecting G. I. loans. Mrs. Stablein testified that she did not discover that the instant transaction was "illegal" until February or March, 1946. However, the secretary of Continental Inc., which negotiated the major loan, testified, and the trial court in its memorandum opinion found, that Mrs. Stablein was fully informed of the provisions of the Federal law before the sale agreement was executed.

There was some delay in getting the required loans completed, but in the meantime, on or about January 1, 1946, Mrs. Stablein permitted respondents to move certain of their belongings, consisting of machine shop tools, clothing, beds, radio, and boat-raising equipment, onto the premises.

About the middle of January, the required funds were available, and these, together with the necessary papers, were transmitted by Continental Inc. to Washington Title Insurance Company as escrow agent, and Mrs. Stablein was thereafter notified to come in, execute a deed, and get the purchase money due her. This she failed and refused to do.

It appears that Mrs. Stablein had, in the meantime, decided that she would not complete the deal. In many conversations over the telephone with Mr. Bryant, between January and March, 1946, she told him that she could not, or would not, sell him the property. She assigned various reasons for her decision: one, that, contrary to her expectations, she had been unable to get a certain house in which to live; another, that Mr. Stablein would not sign the deed; and a third, that a part of the funds paid by the Bryants was "illegal money."

On March 15, 1946, respondents instituted the present action to compel Alvina V. Stablein specifically to perform the contract; Brimson G. Stablein was made a party defendant as claiming some interest in the property. It appears that, on that same day, Mrs. Stablein, through her attorney, sent to respondents' attorneys a letter stating that

the transaction was fraudulent because of the "side money" that had been paid, and enclosing a cashier's check for eight hundred fifty dollars, which represented the earnest money payment of fifty dollars and the additional payments amounting to eight hundred dollars. The check was promptly returned by respondents' attorneys, who stated in their accompanying letter that respondents were no longer relying on the G. I. loan and were then ready and willing to close the deal. At about the same time, respondents abandoned the G. I. loan and substituted therefor other funds procured on other security, sufficient to satisfy the purchase price in full.

It appears that no final decree of divorce was ever entered in the action brought by Mrs. Stablein against her husband, and the fact is that they have been living together ever since the commencement of that action in much the same manner as before.

Upon the evidence adduced before it, the trial court entered its decree adjudging the land here involved to be the sole and separate property of Mrs. Stablein and ordered her to convey it to the respondents in accordance with the terms of her contract.

Under their several assignments of error, appellants make three contentions. The first is that the property covered by the contract was, at the time of the execution of that instrument, the community property of the appellants, and that therefore Mrs. Stablein could not dispose of it as her sole and separate property.

It will be recalled that appellant Alvina V. Stablein, at all times with which we are here concerned, held the legal title to the property by virtue of her quitclaim deed from appellant Brimson G. Stablein. It will also be borne in mind that, by the terms of the property settlement agreement, in which the property here involved was to be set over to Mrs. Stablein, those parties agreed to execute and deliver to each other all instruments necessary to convey or pass title to the respective properties covered thereby; further, that it was expressly agreed between them that the transfer of title and interest in the properties should

take effect and be fixed as of the date of the signing of the instrument, August 10, 1945, regardless of the death or other change of condition of either party.

■ It is established law in this jurisdiction that the status of property, whether real or personal, becomes fixed as of the date of its purchase or acquisition, and remains so fixed unless changed by deed, by due process of law, or by the working of some form of estoppel. *Conley v. Moe,* 7 Wn. (2d) 355, 110 P. (2d) 172, 133 A.L.R. 1089, and cases therein cited.

■ Under this rule, the status of the property as the separate property of Alvina V. Stablein became fixed by the quit-claim deed to her, and it is not herein contended that any change in status was thereafter effected by any of the methods prescribed by the rule.

By the execution of that deed, the husband, Brimson G. Stablein, divested himself of all right, title, and interest in the property, and it thereby became the separate property of the wife, Alvina V. Stablein. Rem. Rev. Stat., § 10572 [P.P.C. § 434-45]; *Findley v. Findley,* 193 Wash. 41, 74 P. (2d) 490, and cases therein cited.

It is true, as further enunciated in the *Conley* case, *supra,* that the legal title to property may be subject to certain equities, *according to the facts and circumstances of the particular case,* in which event an equitable lien may be impressed upon the property, as where community funds or efforts are expended upon the separate property of one of the spouses.

In the case at bar, however, Mr. Stablein is not asking that an equitable lien to the extent of the alleged community interest be impressed upon the property, nor does the evidence show either the amount expended by the community for the improvement of the land, or the value of the enhancement created thereby. Rather than seeking the establishment of a lien on the property, both appellants are now strenuously endeavoring to have the contract nullified in its entirety. Whether or not Mr. Stablein individually, or the community as such, would be entitled to an equitable lien on the funds derived from the sale of the

property to the respondents, is a question with which we are not here concerned.

Added to these facts is the situation shown by the property settlement agreement, which was confirmed by the interlocutory order of divorce. By that agreement, each of the parties thereto was to receive and hold as his, or her, separate property certain specified real estate, the intention being expressed that no change of condition, nor even the death, of either party should in any way affect the agreement.

The intentions of the parties to such agreements, considered in the light of all the surrounding circumstances, will be given effect by the courts if such intentions can be definitely ascertained. *In re Garrity's Estate,* 22 Wn. (2d) 391, 156 P. (2d) 217; *In re Brown's Estate, ante* p. 436, 183 P. (2d) 678.

In this case, we preceive no equities in either of the appellants or the community, sufficiently urgent to require the annulment of the contract which the respondents themselves stand ready to perform.

The second contention made by the appellants is that the contract of sale is illegal because of the payment of "side money," alleged to be in violation of the servicemen's readjustment act, from which quotation has been made above.

Although the act provides, in effect, that loans thereunder are guaranteed only if made pursuant to certain provisions, one of which is that the price to be paid by the veteran for the property shall not exceed the reasonable value thereof as determined by the appraiser, there is no penalty fixed for paying or receiving more than the appraised value. In short, the act relates simply to the conditions under which the government *will guarantee a loan to the veteran* in the first instance, not to contracts pending or concluded between the veteran and third persons. If the price to be paid for the property is found to exceed its appraised value, the government may refuse to guarantee the loan. If it does authorize the loan and the funds are used for the purchase of property, the seller is not concerned with the source of the purchase price. He does not stand

in the position of one who, having loaned money to the veteran, thereafter looks to the government for repayment thereof under its guaranty. His position is that of one who has been paid the full purchase price of his property as fixed by himself. See American Law of Veterans 277, § 393, and footnote 14½ thereunder.

Furthermore, in the case at bar, when appellants in their answer raised the question of "illegal money," respondents, to placate them, at once abandoned the G.I. loan and substituted therefor sufficient other funds to complete the purchase. Appellants therefore have no shred of grievance with respect to the source of the funds with which they are to be paid.

Appellants' third, and final, contention is that respondents did not complete the purchase within the ninety days provided in the contract. Under the facts shown, it may well be doubted that the time limit had actually expired. But assuming that it had, we find not only that the excess of time was but a matter of days, but also that appellants themselves by their conduct contributed to the delay. Aside from that, however, it appears from Mrs. Stablein's own testimony that the time element had nothing whatever to do with her refusal to complete the sale and execute a deed. She stated positively that the only reasons for her refusal were that Mr. Stablein would not join in a deed to the respondents and the circumstances of "illegal money." The contention is without merit.

The decree is affirmed.

MALLERY, C. J., ROBINSON, JEFFERS, and HILL, JJ., concur.