[L. A. No. 21471. In Bank. Mar. 9, 1951.]

H. YOUNG, Respondent, v. WILLIAM J. HAMPTON et al., Appellants.

800

Geo. L. Hampton for Appellants.

Ogden, Crocker & Steelman and Samuel Steelman for Respondent.

EDMONDS, J.—Helen Young, a contractor, sued to enforce a mechanic's lien for the construction of a house for William J. Hampton and Alice C. Hampton. The trial court found that the work had been performed pursuant to a cost-plus agreement, awarded Young a lien for the unpaid balance due under the contract, and directed foreclosure if the debt is not discharged.

According to the settled statement on appeal, the material facts are as follows: William and Alice Hampton discussed with Helen Young the matter of building a house for them. William told her that he is a veteran of World War II. To aid the Hamptons in procuring a veteran's loan, she gave them a letter stating that she would construct for them a

dwelling house and garage according to certain plans and specifications for the sum of $8,500. At her direction, the Hamptons presented the letter to a bank and applied for a veteran's loan.

An appraiser appointed by the Veterans Administration appraised the buildings at $8,283. Helen Young told the Hamptons that the house and garage could not be built for that amount, and they verbally agreed to pay her the difference between the cost of construction and the amount of the bank loan. They afterwards executed a contract whereby she agreed to construct the buildings for $8,283 payable in five installments of 20 per cent each.

Soon after the execution of the contract, but before any work upon the buildings was commenced or materials delivered, Helen Young and the Hamptons executed a second agreement, which evidenced their true intention. By it, the Hamptons agreed to pay her the cost of construction, plus 10 per cent, the total amount not to exceed $9,000. The agreement was to "supersede any and all contracts and agreements made prior" to it, and "all monetary differences between previous contract and this agreement shall and are to be made on or before completion of the above mentioned dwelling and garage."

Neither of the parties disclosed the second agreement to the bank or the Veterans Administration. The Hamptons executed a note, secured by a trust deed, in favor of the bank. At this time, a copy of the first contract was delivered to the bank with the plans and specifications referred to in Miss Young's letter. She applied for and received from the bank the first four payments provided for in the contract upon which the loan had been made. Prior to the date upon which, by that contract, she had obligated herself to complete construction, the Hamptons notified the bank to withhold further payments to her, and she did not receive the fifth installment of the contract price.

The dwelling and garage were not completed until about six months after the date specified in the first contract. Miss Young then commenced the present action, based upon the cost-plus contract, to foreclose a mechanic's lien. The defense of the Hamptons is that the second contract is illegal and contrary to public policy. They cross-complained for the reasonable rental value of the premises for the period between the date of completion and the date upon which the contractor

agreed to complete it. She obtained judgment for $2,839 with interest and costs, and these sums were declared to be a lien upon the realty. Recovery was denied the Hamptons upon their cross-complaint.

Upon their appeal from the judgment and the order denying their motion for a new trial, the Hamptons contend that the cost-plus contract is illegal and cannot be enforced because it is contrary to the provisions of the Servicemen's Readjustment Act (38 U.S.C.A. § 694a). Under that statute, a loan to a veteran for home construction is automatically guaranteed by the federal government ". . . if made pursuant to the provisions of this subchapter, including the following: (1) That the proceeds of such loan will be used for payment of the property purchased or constructed or improved; (2) That the contemplated terms of payment required in any mortgage to be given in part payment of the purchase price or the construction cost bear a proper relation to the veteran's present and anticipated income and expenses; and that the nature and condition of the property is such as to be suitable for dwelling purposes; and (3) That the price paid or to be paid by the veteran for such property or for the cost of construction . . . does not exceed the reasonable value thereof as determined by proper appraisal made by an appraiser designated by the Administrator."

Miss Young argues that there is nothing in the statute which renders the contract unlawful. The act, she says, merely states the conditions under which the federal government will guarantee a loan; it does not prohibit a veteran from buying a house for any price he desires to pay for it. She relies upon *Bryant* v. *Stablein*, 28 Wn.2d 739 [184 P.2d 45], which was a suit for specific performance commenced by the buyers of realty. The seller defended upon the ground that the contract of sale was illegal because of the payment of "side money," alleged to be in violation of the Servicemen's Readjustment Act. The defense was rejected upon two grounds: (1) "Although the act provides, in effect, that loans thereunder are guaranteed only if made pursuant to certain provisions, one of which is that the price to be paid by the veteran for the property shall not exceed the reasonable value thereof as determined by the appraiser, there is no penalty fixed for paying or receiving more than the appraised value. In short, the act relates simply to the conditions under which the government *will guarantee a loan to the veteran* in the first instance, not to contracts pending or concluded between the

veteran and third persons." (2) "Furthermore, in the case at bar, when appellants in their answer raised the question of 'illegal money,' respondents, to placate them, at once abandoned the G. I. loan and substituted therefor sufficient other funds to complete the purchase." The decision was cited with approval in *Ewing* v. *Ford*, 31 Wn.2d 126 [195 P.2d 650].

Subsequent to these decisions, the United States Court of Appeals determined that the criminal penalties of section 715 of title 38 U.S.C.A. are applicable to the Servicemen's Readjustment Act. In *Young* v. *United States*, 178 F.2d 78, the plaintiff in the present action and another were convicted for knowingly causing a false certificate to be made concerning a loan to a veteran for the purchase of a home. One count of the indictment concerned the transaction which is the subject of this litigation. Count two charged Miss Young with informing a bank that the amount to be paid by a veteran of World War II for the purchase of a lot and home, ". . . as to which a loan guarantee was being sought from the Government of the United States," included certain amounts required to purchase a lot and construct the house. Further allegations were that Miss Young caused the bank to certify in a Home Loan Report presented to the United States Veterans Administration that the amount to be paid by such veteran to purchase such lot and to construct such house did not exceed the reasonable value thereof of $9,700, as determined by an appraiser designated by the Administrator of Veterans' Affairs. The defendants concealed from the bank and the Veterans Administration, the indictment concluded, that they had obtained from the veteran a contract to pay $2,200 for the lot, and a contract to pay the cost of construction of the house, plus 10 per cent, with a minimum of $8,200, and demanded from the veteran $9,000 for such construction. It was held that Congress had not failed to denounce the act charged in the indictment as a crime, although the transaction is not prohibited by the terms of the Servicemen's Readjustment Act.

In *Karrell* v. *United States*, 181 F.2d 981, the defendant was convicted of a violation of the same statute because of his participation in a transaction designed to obtain a federally guaranteed loan upon property purchased for more than the appraised value. To the same effect is *United States* v. *Oakland*, 81 F. Supp. 343, and *United States* v. *Selph*, 82 F. Supp. 56.

The facts in *Diamond* v. *Willett*, (La.App.) 37 So.2d 338, parallel those in the present action. In that case, a veteran purchased a home from the proceeds of a "G. I. Loan" which had been obtained upon the basis of the vendor's written commitment to sell at a price fixed pursuant to an appraisal by the Veterans Administration. Not being willing to sell the property for the appraised value, the vendor agreed to accept the veteran's note for an additional sum. · In a suit upon the note, recovery was denied.

Speaking of the policy of the Servicemen's Readjustment Act, the court said: "The acts of Congress herein referred to are designed to give relief to members of the armed forces, of limited means, who honorably served their country during World War II. It was realized by Congress that no greater duty rested upon it than to aid and encourage, in substantial ways, the establishment of homes by those who had loyally served the Government in its hour of peril. One of the several modes adopted to attain this desired end is reflected from the passage of laws that unequivocally insure against financial loss those persons who invest in notes of ex-service men, secured by mortgages on homes acquired by them. Before said insurance can become effective in any given case, inquiry is made concerning the ability of the ex-service man to repay the mortgage debt, and care is exercised to protect him against the assumption of obligations he might default upon eventually. For this reason, it is imperative that the correct sale price of a home be declared in the application for assistance." (37 So.2d at p. 341.)

Analogous cases construe the Home Owners' Loan Act of 1933, and the National Housing Act of 1934. (See cases cited in 110 A.L.R. 250; 121 A.L.R. 117; 125 A.L.R. 800.) In *R. R. Adams Co.* v. *Pacific States Sav. & L. Co.*, 34 Cal.App.2d 723 [94 P.2d 370], a contract calling for a consideration contrary to the policy of the act was held to be void. *McAllister* v. *Drapeau*, 14 Cal.2d 102 [92 P.2d 911, 125 A.L.R. 800], concerned the validity of a second lien made contrary to the policy of the act. The statute did not expressly declare a second lien to be illegal, but the rules and regulations provided that the H.O.L.C. would not refund the first mortgage if the creditor demanded a second lien unless the financial ability of the debtor and the financial arrangements were such that the debtor would have a reasonable opportunity to pay off both mortgages. It was therefore held that "The obtaining of secret second liens by the creditor violates the basic

public policy expressed in the act." (*McAllister* v. *Drapeau, supra,* at p. 109.)

The policy announced in these decisions of affording the protection of the law to those whom the federal loan statutes are designed to benefit is a sound one and equally applicable to the veteran beneficiary of the Servicemen's Readjustment Act. By section 694a of that statute, the government endeavors to assure terms of payment which bear a proper relation to the veteran's present and anticipated income and expenses. The requirement of the same section that the price to be paid by the veteran for the cost of construction shall not exceed the reasonable value as established by a designated appraiser was obviously enacted to protect the borrower from acquiring property at an exorbitant price. That this was the legislative intent is manifest from the discussions at the time enactment of the statute was being considered. (Congressional Record, vol. 90, pt. 4, pp. 4649 [May 12, 1944, to June 12, 1944].)

For the same reasons that a second lien which violates the basic public policy expressed in the Home Owners' Loan Act was held to be void, a contract which is contrary to the policy of the Servicemen's Readjustment Act is also unenforceable. To hold otherwise would invite builders to exact similar secret contracts with the assurance that they would be upheld.

Miss Young contends that there is no evidence of any application for benefits of the act or that the loan made by the bank was guaranteed. Contrary to this contention, the record shows that application was made for a guaranty of the loan in the amount of $4,000. The bank was induced to submit to the Loan Guarantee Division of the Veterans Administration a Home Loan Report, with the veteran's certificate of eligibility and the appraisal report, in which a Loan Guaranty Certificate was requested. Although the report was approved, there is no evidence that the certificate was issued. However, the lack of such evidence is not decisive. The obvious purpose of Miss Young's act was to obtain a higher price for the construction of the Hampton home than that permitted by the Servicemen's Readjustment Act. At the same time, she represented that she would construct the buildings for their appraised value in order that construction might be financed under the act.

Manifestly, the entire transaction was designed to evade

the provisions of the act and also to obtain its benefits. The statute was intended solely to aid the veteran in the establishment of a home. Any benefit to a contractor was incidental. However, if a secret contract for an amount in excess of the appraised value may be exacted from a veteran, the purpose of the act is defeated. There is no legal reason why the transaction in the present case, which is plainly contrary to the public policy of the act, is rendered legal merely because it was not entirely successful. The fact that Miss Young's illegal acts were discovered before the Veterans Administration finally approved the transaction does not make the contract valid.

The Hamptons' claim that they are entitled to a judgment for the reasonable rental value of the premises for the period during which completion of the buildings was delayed rests upon a provision of the first contract executed by the parties. But from the findings of the trial court and the settled statement on appeal, it appears that none of them intended that contract to be their true agreement. "If either party knows that the other does not intend what his words or other acts express, this knowledge prevents such words or other acts from being operative as an offer or an acceptance." (Rest., Contracts, § 71[c].) There being no operative promise on the part of Helen Young to complete construction on or before any particular date, there is no basis for the asserted claim for reasonable rental value.

The judgment is reversed with directions to the trial court to enter judgment denying Helen Young relief upon the cost-plus contract, and denying the Hamptons any recovery for rent. The appeal from the order denying a new trial is dismissed.

Gibson, C. J., Shenk, J., Traynor, J., Schauer, J., and Spence, J., concurred.

CARTER, J.—I concur in the judgment of reversal and generally in the views expressed by Mr. Justice Edmonds in the majority opinion, which views are in accord with those expressed by me in my dissent in the case of *Shiver* v. *Liberty Building-Loan Assn.*, 16 Cal.2d 296, 301 [106 P.2d 4].