## Oruch v. Lipton et ux.

*M. L. Davis*, for plaintiff.

*Cohen & Cohen*, for defendants.

SLOANE, J., January 6, 1953.—I shall order the dismissal of these preliminary objections to this complaint in assumpsit. I think we ought to be interested to know both sides of the circumstances of the transaction between them and not deal with the austere mode of finality suggested by the pleadings as they are now before me. Both sides ought to be made manifest and as it now stands I have only the one side, plaintiff's side, and as he states it this is what transpired:

Back in November of 1946 plaintiff, a veteran of World War II, orally agreed with defendants to purchase from them certain premises in Philadelphia, 6626 N. Smedley Street, for $13,500. But he wanted to get a "G. I. mortgage", one guaranteed under the

Servicemen's Readjustment Act of 1944, 58 Stat. at L. 294, 38 U. S. C. §694(a), and the act provided that to get such a mortgage-guarantee, the price the veteran pays for the house must not exceed its reasonable value as determined by an appraisal made by an appraiser designated by the Administrator of Veterans' Affairs. (The mortgage is then guaranteed by the Government up to 40 percent.) The appraisal in this case was $10,500 and no more; so plaintiff and defendants executed a written agreement for the sale of the house at the figure of $10,500; in this way the Government guarantee could be obtained. Plaintiff, together with the proposed mortgagee (Central Mortgage Company) made the application to the United States Veterans Administration, in which both certified that the price of the property was $10,500, submitting the written agreement of sale. (The mortgagee did not know of the oral arrangement between the parties.) After approval of the application, Central Mortgage Company granted a loan of $10,000 to plaintiff, guaranteed by the Government to the extent of $4,000.

Before settlement for the property on February 20, 1947, plaintiff made "side payments" to defendant-sellers of sums totaling $3,000, pursuant to their oral understanding, about which, as stated, neither the mortgagee nor the Government had any knowledge.

Now, in March 1952, over five years later, plaintiff brought the present action to recover the overpayment of $3,000, the amount by which the actual purchase price exceeded the appraisal and the figure in the written agreement.

Defendants filed preliminary objections; they say plaintiff has no cause of action since his complaint shows he voluntarily agreed to pay $13,500 for the property and that he was pari delicto to any alleged fraud or violation of statute in falsely certifying to

the Government that the price was $10,500 and, additionally, that he seeks to retain the benefits of the transaction because he does not offer to rescind entirely but wants to keep the property while recovering the alleged excess payment.

It might be asked whether plaintiff has any cause of action since the Servicemen's Readjustment Act provided for none when the transaction took place. Since then, in 1951, an amendment has been added (38 U. S. C. §694(c) (1)), permitting an action by a veteran "after discovering he has overpaid", or by the Attorney General in certain circumstances, with a permissible recovery of "three times the amount of such excess consideration" with costs and reasonable attorneys' fees. The legislative history of this amendment indicates that up to the time of the amendment it was not unlawful "for the seller of such property to demand and receive from the veteran purchaser a consideration in excess of the appraised value". See U. S. Code Congressional and Administrative Service, 1951, Legislative History, 82nd Congress, 1st session, page 1774 et seq.

But I should not think the failure of specific statutory authorization denies a ready and familiar remedy to enforce a statutory obligation. See Texas & New Orleans Railroad Company v. Brotherhood of Railway clerks et al., 281 U. S. 548; Texas & Pacific Railway Company v. Rigsby, 241 U. S. 33; Virginian Railway Co. v. System Federation No. 40 et al., 300 U. S. 515; Deckert et al. v. Independence Shares Corp. et al., 311 U. S. 282. See dissent in Montana-Dakota Utilities Co. v. Northwestern Public Service Co., 341 U. S. 246, 261. If the purpose of the Servicemen's Readjustment Act is to be given adequacy and firmness, courts should extend a right to protect that adequacy and assure the purpose. Courts should harken to an express constitutional policy of the law-making body.

Thus I think plaintiff has a right of action, laying to one side for the moment his own inadequacy because of his participation with defendants in misleading both the mortgagee and the Government.

But he has no right of action under the amendment of 1951: the matter in hand took place in 1946 and I would not think of allowing the amendment to be retroactive when Congress gave no such intimation. As to retroactivity, we must be careful not to invest or prejudice or alter rights unless required by the statute to do so: Sawdey Liquor License Case, 369 Pa. 19, 22; Bowie Coal Company Petition, 368 Pa. 102. The amendment is penal in nature, and to allow it to be retrospective would make it ex post facto: Preston v. Aron-Drex Realty, Inc., 106 F. Supp. 690 (E. D. Pa., 1952).

Nor do I think the amendment of 1951 shows no right to recover for overpayments till Congress did act as it did in 1951. It remains that the veterans' acts were passed for the veteran and to help him, perhaps even against himself, as in this very situation. See Diamond v. Willett, 37 So. 2d 338 (La. App., 1948); Higby et ux. v. Hooper et al., 124 Mont. 331, 221 P. 2d 1043 (1950); Young v. Hampton et al., 36 Cal. 2d 799, 228 P. 2d 1 (1951).

There are cases on the Veterans' Readjustment Act but not to our point. In Young v. Hampton, supra, plaintiff agreed to build a house for a veteran and a purported contract in the amount of $8,283 was executed, which complied with the Government appraisal. The money was to be paid out to the builder by the lending institution in five installments of 20 percent each during the progress of the work. A second agreement, by which the veteran agreed to pay cost plus 10 percent (not to exceed $9,000) was executed between the parties but this was not disclosed to the bank which made the construction loan nor to

the Government, which guaranteed part of it. When defendant-veteran instructed the bank not to pay out the fifth installment to plaintiff-builder, the latter sought to enforce a mechanics' lien to obtain the additional amount due under the second agreement. Plaintiff was denied recovery; it was held that the existence of the "side" agreement rendered the contract illegal and void, and therefore not enforcible by plaintiff. However defendant also could not recover on a counterclaim for loss of rentals caused by delay by the builder in completing the construction, on the ground that the date set for completion was contained only in a contract which the parties had not intended to be binding upon them. The effect of the decision seems to be that the court will leave the parties where it finds them since both sides participated in the deception of the Government and the lender, though the case does contain language that the statute was enacted to protect the borrower-veteran from acquiring property at an exorbitant price.

In Diamond v. Willett et al., 37 So. 2d 338 (La. App., 1948), there was a side agreement whereby the veteran agreed to pay more for a property than the appraised value and gave the seller a promissory note for the excess. The vendor sued for the unpaid balance of the note and was not permitted to recover; however the veteran likewise was not able to get back the payments already made.

In the State of Washington it has been held that the side agreement is not illegal and void as between the parties themselves; that the act is intended primarily to protect the Government so that it should not be placed in the position of guaranteeing loans where the ability of the borrower to repay the loan has been impaired because he has acquired the property at too high a price. Thus, in Bryant et ux. v. Stablein et al., 28 Wash. 2d 739, 184 P. 2d 45 (1947), the

veteran prevailed in his suit for specific performance of an agreement to buy above the appraised value; it was held that the seller was not concerned with the source of the money used to pay him the price he himself had fixed. In Ewing v. Ford, 31 Wash. 2d 126, 195 P. 2d 650 (1948), where the sellers sued the veteran on a contract to purchase a lot in addition to the house (he was able to buy the house only by agreeing to purchase the lot also), it was held there had been no violation of the Servicemen's Readjustment Act because the veteran had paid no more for the house than the appraised value. It was said that the act related only to conditions under which the Government would guarantee a loan to a veteran in the first instance, and had no application in considering contracts either pending or concluded between the veteran and third parties. See also Investment Service Co. v. Bronkey et al., 193 Ore. 364, 238 P. 2d 245 (1951), where it was held that a transaction was not illegal as between the veteran and the seller even though there was deception of the Government as to actual price, for the purpose of obtaining a loan guarantee (in this instance, there was a sale of trucks).

Actions by a veteran under the Veterans' Emergency Housing Act of 1946 are not analogous because a maximum sales price or "ceiling price" was provided under that act; the veteran could recover overcharges even if he had agreed to them (provided he brought his action within a year after his purchase). In Sedivy et al. v. Superior Home Builders, Inc., et al., 188 F. 2d 729 (C. A. 7, 1951), it was held that buyer-veterans could not recover overcharges above the maximum prices of homes under the Veterans' Emergency Housing Act of 1946 where they did not sue within the year limitation provided in the act. The veterans claimed the time limitation was removed because of the repeal of the 1946 act by the Housing

and Rent Act of 1947; the court however held that the repeal of the earlier act did not have the effect of continuing the right of action without any limitation as to time but that the provision that the overcharge was a violation was likewise repealed. Thus plaintiffs were limited to their remedies under the 1946 Act, and having allowed the year to elapse, their complaints were dismissed.

In the Home Owner Loan Act cases, a second lien given by the borrower to his creditor is held to be void and unenforcible as contrary to the policy of that act, which was to assist the borrower to clear up his old obligations on a property completely by substituting a new one to the corporation. The creditor took bonds of the corporation in full satisfaction of the debt. Where the debtor gave the creditor a secret second lien because of an unpaid portion of the old debt, the creditor could not enforce the lien, or it would be stricken upon the debtor's action. It appears however that payments already made by the mortgagor-debtor to the creditor could not be recovered by him. See Anderson v. Horst et ux., 132 Pa. Superior Ct. 140, 145.

Criminal prosecutions have been upheld where the charge was the making of a false certificate to obtain government guarantee of a loan to a veteran. In Karrell v. United States, 181 F. 2d 981 (C. A. 9, 1950), it was held that a seller who had untruthfully represented, in an application for a Government-guaranteed loan, that the price of the property did not exceed the Government appraisal, had committed a Federal offense. It was also held that the court could require as a condition of probation for defendant, that the overpayment above the appraisal should be returned to the veteran.

In Young v. United States, 178 F. 2d 78 (C. A. 9, 1950), it was held that a Federal offense was suffi-

ciently charged where it was alleged that defendants knowingly caused a false certificate to be máde concerning an application for a housing loan under the Servicemen's Readjustment Act. (These defendants were the same persons as plaintiffs in Young v. Hampton, supra). In United States v. Aderman, 191 F. 2d 980 (C. A. 7, 1951), the conviction of a real estate broker who had caused a false certificate of the amount a veteran paid for a property to be made, so as to induce Veterans' Administration guarantee of a mortgage loan, was sustained. (The method used here was to disguise the additional price by making it appear that personal property on the premises was being purchased separately, with a chattel mortgage given by the veteran for the personal property.) See also Heald v. United States, 175 F. 2d 878 (C. A. 10, 1949); United States v. Murtaugh et al., 190 F. 2d 407 (C. A. 4, 1951); United States v. Mignon et al., 103 F. Supp. 20 (E. D. Pa., 1951), and generally, note in 19 A. L. R. 2d 836.

The majority of the above cases adopt the position that the seller will not be permitted to recover any excess price over the appraisal or to enforce a lien for such excess, and the veteran may not recover overcharges which he has already paid. In Karrell v. United States, supra, where the court ordered the overcharges to be returned to the veterans, this was done in a criminal prosecution as a condition for placing defendant on probation. The recovery was not in a civil action by the veteran. See also Higby v. Hooper, supra.

Though the benefits of the act show a universal and deserved benevolence to all veterans and it is therefore intended to benefit them as a class, it may be considered for the veteran who stands in need of the aid provided—the one who is discharged from the service with little cash on hand and who would not

otherwise be in a position to purchase a home he needs. In our case the veteran apparently had the cash and was willing to use it to buy defendants' house at the price they wanted, though he also needed or wanted the Government-guaranteed loan. There was deception by both against the Government (and the mortgagee); the certification was actually made by the veteran and not the sellers though they obviously had a share in it since they joined with plaintiff in executing the written agreement for the appraisal figure of $10,500. The secret agreement between the parties was not illegal in itself; the illegality arose from the fact that Government guarantee of a mortgage loan was sought with a false agreement and a false certification made in order to get it.

There are difficulties enough to good discernment: (a) Plaintiff's part in the scheme to overcome the Act of Congress; he did not keep to the statute and he should not have the gracious covenant granted by that statute; (b) plaintiff's delay of five years in asserting a right of recovery; (c) possible change of position of defendants with respect to the $3,000, assuming the theory of restitution and unjust enrichment; (d) failure of plaintiff to return what he got, and most probably his present inability to do so. See Walker v. Oakley et ux., 347 Pa. 405, 410; A. L. I. Restatement of the Law of Contracts, sec. 601.

The matter is complex enough to wait until both sides are heard on the details of the transaction and the events that followed. For this case, with primary emphasis on policy and restitution, a desire to uphold that policy takes on an equitable side and we ought to determine ad hoc the equities of the situation—the policy of the Veterans' Readjustment Act and protection of the veteran weighed against the veteran's own acts and the consequences to defendants. I therefore dismiss the objections to the complaint; defend-

230

ants may file an answer to the merits within 20 days hereof.

It is so ordered.