[Civ. No. 22162. Fourth Dist;, Div. One. Aug. 11, 1980.]

**MICHAEL H. GAY, Plaintiff and Appellant, v.
MICHAEL A. BRODER, Defendant and Respondent.**

**COUNSEL**

Michael H. Gay, in pro. per., for Plaintiff and Appellant.

Walter Maund for Defendant and Respondent.

**OPINION**

**LORD, J.***—Michael H. Gay appeals from a judgment of dismissal entered July 19, 1979, following the sustaining of a demurrer to his first amended complaint without leave to amend.

*Assigned by the Chairperson of the Judicial Council.

The first amended complaint sets forth three causes of action which we summarize:

*First Cause of Action*

In March 1978, Gay, a veteran, applied for a home loan on property on Devon Court in San Diego. The application was made to Home Federal Savings and Loan Association and the loan was to be guaranteed by the Veterans Administration, an agency of the United States. Upon such application the Veterans Administration has a statutory duty to make an appraisal of the property and may appoint a designated fee appraiser to do so. Michael A. Broder, a designated fee appraiser, entered into an agreement with the Veterans Administration to make the appraisal to determine the amount of the loan to be guaranteed. This agreement was made for Gay's benefit. Broder submitted a bill for $95 which Gay paid. The Veterans Administration performed its agreement with Broder. Broder held himself out to be a qualified appraiser. He submitted an appraisal and negligently set the value of the property at $85,000, although the reasonable value of the property was no less than the sales price of $117,500. As a proximate result of this negligence, Gay was unable to obtain financing guaranteed by the Veterans Administration and was forced to obtain conventional financing, to his monetary damage.

*Second Cause of Action*

In April 1978, a representative of Home Federal Savings and Loan Association informed Broder his appraisal was too low. Gay gave Broder "comparables" in the same neighborhood greatly exceeding the value set. Nevertheless, Broder refused to reappraise the property. As a proximate result of this negligence, Gay was unable to obtain the guaranteed loan, to his monetary damage. Broder acted in a wanton and reckless manner and Gay is entitled to punitive damages.

*Third Cause of Action*

Gay has performed under the agreement for the appraisal. Broder breached the agreement by submitting an appraisal at less than the reasonable value of the property. Although request has been made, Broder has failed to perform and as a result of this breach, Gay has suffered monetary damage.

The first amended complaint does not expressly identify the statute under which the application for the home loan was made, but the parties' arguments before the trial court were based upon 38 United States Code section 1801 et seq. It was appropriate for the trial court to infer from Gay's allegations that this was the federal statute in question and to take judicial notice of it. (Code Civ. Proc., § 430.70.)

Gay raises these issues on appeal: (1) Was he a third party beneficiary, or otherwise a party, to the contract to perform an appraisal between Broder and the Veterans Administration? (2) Did Broder have a duty to him under *Biakanja* v. *Irving* (1958) 49 Cal.2d 647 [320 P.2d 16, 65 A.L.R.2d 1358], or otherwise, so that he may maintain an action for negligence? The case appears to be one of first impression in California.

Title 38 United States Code section 1801 et seq. is based upon the Servicemen's Readjustment Act of 1944 which was subtitled "An act to provide Federal Government aid for the readjustment in civilian life of returning World War II veterans." That the act was intended, in general, to benefit veterans is of course apparent from its legislative history and the provisions themselves. But this does not answer the question whether the fee appraiser designated by the Veterans Administration can be held liable to the veteran for an inaccurate appraisal.

Title 38 United States Code section 1810(b)(5) provides that no loan may be guaranteed by the administration unless "the loan to be paid ...for such property...does not exceed the reasonable value thereof as determined by the Administrator..."

To support the contention that he was a third party beneficiary to the contract between the Veterans Administration and Broder, Gay relies heavily on two California cases, one decided by the Supreme Court, which hold that the Servicemen's Readjustment Act was enacted for the benefit of the veteran. *Young* v. *Hampton* (1951) 36 Cal.2d 799 [228 P.2d 1, 19 A.L.R.2d 830], was a suit by a contractor to foreclose a mechanic's lien for the construction of the defendants' house. To aid the defendants in applying for a veteran's loan, the plaintiff gave them a letter stating that she would construct the house for them for $8,500. The appraiser appointed by the Veterans Administration appraised the construction at $8,283. The plaintiff told the defendants the house could not be built for this amount and they agreed to pay her an amount greater than the bank loan. A contract was executed for the ap-

praised value and presented to the bank. The parties executed a second secret agreement for cost of construction, plus 10 percent, the total amount not to exceed $9,000. The bank loan was made, secured by a deed of trust and guaranteed by the Veterans Administration. The plaintiff obtained a judgment in the trial court for $2,839, the difference between the $8,283 loan and the sum due by the terms of the second agreement. This judgment was reversed.

The decision in the *Young* case resulted from a construction of 38 United States Code section 694a which was the basis for the present 38 United States Code section 1810. Section 694a differed in a number of respects. It provided not only for home loans to veterans but also for the guarantee, up to $2,000, of loans for any purpose and did not restrict the amount of the loan to the value of any security the lender might require. As to home loans, it provided that no loan would be guaranteed unless "...*the price paid or to be paid* by the veteran for such property...does not exceed the reasonable value thereof as determined by proper appraisal made by an appraiser designated by the Administrator." (Italics added.) Based on this language pertaining to home loans, the Supreme Court held the parties' second agreement to be against public policy and therefore void, stating (at pp. 805 and 806) the "requirement...that the price to be paid by the veteran...shall not exceed the reasonable value as established by a designated appraiser was obviously enacted to protect the borrower from acquiring property at an exorbitant price...[¶] Manifestly, the entire transaction was designed to evade the provisions of the act and also to obtain its benefits. *The statute was intended solely to aid the veteran in the establishment of a home.* Any benefit to a contractor was incidental. However, if a secret contract for an amount in excess of the appraised value may be exacted from a veteran, the purpose of the act is defeated." (Italics added.)

The doctrine of *Young* v. *Hampton, supra,* was followed in *Sattler* v. *Van Natta* (1953) 120 Cal.App.2d 349 [260 P.2d 982], where the plaintiffs sued to have a note secured by a second deed of trust declared void, the note representing a sum in excess of the appraised value of the property purchased.

To counter Gay's contention that the provisions of 38 United States Code section 1810(b)(5) make him the third party beneficiary of the agreement between Broder and the Veterans Administration, Broder cites *Investment Service Co.* v. *Bronkey* (1951) 193 Ore. 364 [238 P.2d

245], in which the Oregon Supreme Court considered that part of 38 United States Code section 694a which dealt with the guarantee of loans for any purpose. In that case the defendants, one of whom was a veteran, applied for a loan at a Portland bank, the plaintiff's assignee. The defendants proposed to purchase a truck and trailer for use in a logging business. The bank had an appraisal made of the truck and trailer and also of the defendants' Plymouth automobile to the end that its loan might be guaranteed to the extent of $2,000 by the federal government. The appraisal set the value of all three vehicles at $6,000 which the bank deemed was a sufficient security; $6,500 was loaned in June 1946; another $850 in October 1946. The defendants defaulted. The bank repossessed, sold the vehicles and sued for the deficiency. The defendants contended that the appraisal given by bank was too high; that the bank had a duty to them to see that a proper appraisal was made; that under 38 United States Code section 694a the bank, as a fiduciary, was a quasi-guardian of the borrower and must see to it that he does not borrow too much. Rejecting this contention as "novel," the court stated (at p. 368) "The act above mentioned does contain several safeguards respecting loans to veterans. Appraisal of the property offered as security for the loan is one. *But all such provisions are there solely for the protection of the Federal Government and as conditions which must be set before the government will assume any responsibility for repayment of any part of the loan.* They relate entirely to the relationship between the federal government and the lender and not between the lender and the borrower." (Italics added.)

Gay asserts that the *Bronkey* decision is simply wrong and, in any event, the principle of stare decisis compels this court follow the California Supreme Court's direction in *Young* v. *Hampton, supra,* and find he has a right based upon contract to maintain this action against Broder. This contention is without merit.

Had the Oregon Supreme Court in *Bronkey* been considering that part of 38 United States Code section 694a dealing with home loans, its statement that "...all such provisions [appraisal] are there solely for the protection of the Federal Government..." would certainly have been too broad. But this statement, as it relates to the all-purpose loans, is correct. The appraisal required was clearly not designed to protect the veteran from a deficiency judgment resulting from inadequate security. The loan could be in excess of the appraised value. The appraisal was designed to safeguard the federal government from responsibility upon its guarantee by reason of inadequate security.

As to the contention in regard to stare decisis, we do not believe that our Supreme Court in *Young* v. *Hampton, supra,* intended to rule that the purpose of agreement between the Veterans Administration and the designated fee appraiser was to make the veteran a party to whom a contractual duty was extended. Indeed, Gay concedes that this was not the issue before the court. The law of the case is simply that any agreement for the purchase of a home for a price in excess of its reasonable value, when based on a loan guaranteed by the Veterans Administration, is void as against public policy. But even if the law of the case is broader than this and would justify Gay's argument about stare decisis, the parties have overlooked the significance of the amendments to 38 United States Code section 1810(b)(5) since the decision in *Young*.

In 1968 Public Law No. 90-301, section 2(a), substituted the words "loan to be paid" for "price paid or to be paid" in section 1810(b)(5). The legislative history can be found in 1968 United States Code Congressional and Administrative News, page 1923. The purpose of the bill was to "permit an eligible veteran to pay as the sale price of a home purchase such amount in excess of the reasonable value as the veteran may determine..." (at p. 1924). Obviously, the provision was no longer "to protect the borrower from acquiring the property at an exorbitant price." It became solely a provision to protect the Veterans Administration from assuming the responsibility of a guarantor upon inadequate security. Payment by the veteran of the designated appraiser's fee does not change this. This is merely a cost of the application for the guaranteed loan.

We conclude that there was no privity of contract between Broder and Gay. Judicial notice of the statute in question controverts the allegation in the complaint that the "agreement was made for the benefit of plaintiff."

We next consider whether, despite a lack of privity of contract, the agreement between the Veterans Administration and Broder gave rise to a duty on his part to Gay to exercise reasonable care in the conduct of his appraisal. Gay directs our attention to *Biakanja* v. *Irving, supra,* 49 Cal.2d 647, in which the intended beneficiary of a will was allowed recovery against a notary public who had prepared the will and negligently failed to have it attested. The court held (at p. 650) "The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the

balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm."

Based upon the allegations of his first amended complaint, Gay makes tenable arguments as to all these factors, save one perhaps. We refer to the "closeness of the connection between the defendant's conduct and injury suffered." Under 38 United States Code section 1810 (b)(5) the reasonable value of the property is "determined by the Administrator." According to 36 Code of Federal Regulations section 4340(b), a regulation promulgated under the statute, the appraisal is "subject to review and adjustment by the Administrator." It is a nice question whether the legal cause of the injury complained of was Broder's appraisal or the administrator's determination.

Assuming, however, that the first amended complaint alleges facts which arguably bring the case at bar within the "various factors" listed in *Biakanja*, pointing to liability, the list presented there was not meant to be all-inclusive. ■ Whether a duty to exercise reasonable care to a particular plaintiff exists "is a question of law and depends on a judicial weighing of the policy considerations for and against the imposition of liability under the circumstances." (*Goodman* v. *Kennedy* (1976) 18 Cal.3d 335, 342 [134 Cal.Rptr. 375, 556 P.2d 737].) In *Goodman* the plaintiffs sought damages from the defendant, an attorney, for losses they incurred on shares of stock purchased from the defendant's clients. They alleged that the defendant negligently advised his clients that the shares could be issued to them as stock dividends and sold to third persons without jeopardizing the exemption from the requirement of registering the corporation's stock under the Securities Act of 1933. The alleged result of the purchase was an order by the Securities and Exchange Commission suspending the exemption with consequent loss of the stock's value, to the plaintiffs' damage.

The court affirmed the judgment of dismissal entered following the sustaining of a general demurrer to the complaint without leave to amend. At page 344 the court stated, "To make an attorney liable for negligent confidential advice not only to the client who enters into a transaction in reliance upon the advice but also to the other parties to the transaction with whom the client deals at arm's length would inject

undesirable self-protective reservations into the attorney's counselling role. *The attorney's preoccupation or concern with the possibility of claims based on mere negligence (as distinct from fraud or malice) by any with whom his client might deal 'would prevent him from devoting his entire energies to his client's interests'* . . . . The result would be both an 'undue burden on the profession' . . . and a diminution in the quality of the legal services received by a client." (Italics added.)

■■■ In light of our conclusion that the present provisions of 38 United States Code section 1810(b)(5) are designed to protect the Veterans Administration and not the veteran, the duty of the designated fee appraiser is to submit to the administration an appraisal of value consonant with what he believes is the actual reasonable value of the property. Concern with the possibility of claims against him for refusing to set a value as high as the loan desired by the applicant veteran would deter the appraiser from reporting to the administration his true opinion as to value and tend to cause him to breach his duty to the federal government. The policy considerations against the imposition of liability in the instant case are manifest.

The judgment of dismissal is affirmed.

Cologne, Acting P. J., and Staniforth, J., concurred.

A petition for a rehearing was denied August 26, 1980, and appellant's petition for a hearing by the Supreme Court was denied November 12, 1980. Manuel, J., was of the opinion that the petition should be granted.