[Sac. No. 4479. In Bank.—June 29, 1933.]

SECURITY–FIRST NATIONAL BANK OF LOS ANGELES, a National Banking Association, Respondent, v. J. G. RUDDLE PROPERTIES, INC. (a Corporation), et al., Appellants.

436

James F. Peck, Robert L. McWilliams, Gibson, Dunn & Crutcher, Stephen W. Downey, Edward Bickmore, C. H. White, C. F. Rafferty, Louis Ferrari and T. J. Bricca for Appellants.

O'Melveny, Tuller & Myers, Homer I. Mitchell and Walter K. Tuller for Respondent.

THE COURT.—A hearing was granted in this case after decision by the District Court of Appeal, Third Appellate District, and upon further consideration of the cause we adopt part of the opinion of Mr. Presiding Justice Preston, reading as follows:

"The Security-First National Bank of Los Angeles, having suceeded to all the rights and authority of the Los Angeles

Trust and Savings Bank and the Pacific-Southwest Trust and Savings Bank, was substituted as plaintiff in this action.

"Plaintiff brought this action to foreclose a mortgage or deed of trust executed by defendant J. G. Ruddle Properties, Inc., to secure $300,000 in bonds.

"Plaintiff was named as trustee in said instrument and judgment was rendered in its favor as said trustee for the sum of $466,580.97, foreclosing the said mortgage and ordering the property described therein to be sold and the proceeds applied to the payment of said sum.

"The judgment further provided that defendant Hunter, Dulin & Company has a lien on said property, subject to plaintiff's mortgages, for $26,338.17; that defendant Carl E. Wagner has a lien on said property, subject to the lien of plaintiff and to the lien of Hunter, Dulin & Company, for $33,283.01; and that defendant T. H. Carlon has a lien on said property, subject to the lien of plaintiff and the liens of Hunter, Dulin & Company and Wagner, for $29,163.55.

"From this judgment defendants Ruddle Properties, Inc., Carlon, Lemas, Pareira, Bettencourt, Silva, Petta and Wagner have appealed.

"This mortgage or deed of trust was given to secure the payment of bonds to the amount of $300,000, 275 of said bonds being of the denomination of $1,000 each and 50 of said bonds being of the denomination of $500 each. Permit from the corporation commissioner was obtained for the sale of said bonds, amounting to the sum of $225,000, but no permit was secured for the sale of the bonds amounting to the sum of $75,000.

"The court found that all of said bonds were sold by appellant J. G. Ruddle Properties, Inc., to *bona fide* purchasers for value in good faith, before maturity, without notice of any defect or infirmity in said bonds, or any of them. The Hunter-Dulin Company acted as agents for J. G. Ruddle Properties, Inc., in negotiating the sale of said bonds.

"The principal contention of appellants is that the mortgage or deed of trust was altered, in material respects, after its execution, without the knowledge or consent of appellant Ruddle Properties, Inc.

"Allan Ruddle, a witness for appellants, testified that he was the vice-president of Ruddle Properties, Inc., at the

time the mortgage or deed of trust was executed. The original mortgage or deed of trust, together with a copy, were handed to witness by Hugh Landram, the attorney for Ruddle Properties, Inc. He took them home and the next day, August 10, 1922, he, his father, since deceased, and his brother, Garland Ruddle, then secretary of said company, carefully read the said document and the two defendants were identical. Witness testified that there were pencil alterations in both the original instruments and in the copy, and that the alterations were the same in each; that he retained possession of said documents until August 14, 1922, when he and his father and brother went to Merced and in the office of their attorney, Landram, the original was signed and acknowledged; that at that time the pencil interlineations were still on the original after its execution; that Phil Brooks, the agent of Hunter, Dulin & Company, came to the home of witness on August 15, 1922, and brought the bonds, which were signed by his father and brother and were delivered to said Brooks, together with the mortgage or deed of trust; that Brooks said that when he got back to Los Angeles he would write in ink the pencil notations contained in the original; this witness also testified that there was a good deal of hurry and rush among the attorneys in order to get the papers in shape for the bond issue; that all papers regarding this matter were prepared in Los Angeles and sent up from there. The testimony of Garland Ruddle on behalf of appellants was substantially the same as that of Allan Ruddle.

"An examination of the copy of the mortgage or deed of trust returned by Allan Ruddle and which appellants introduced in evidence as their exhibit No. 7 shows about thirty interlineations in pencil, whereas the original mortgage or deed of trust executed on August 14, 1922, shows none (being plaintiff's exhibit 1).

"H. K. Landram, a witness for respondent, testified that he was the attorney who represented J. G. Ruddle Properties, Inc., in the matter of their bond issue of $300,000; that the deed of trust securing same was executed in his office in Merced and in his presence and was acknowledged before him as a notary public; that the said instrument did not when so executed contain any pencil notations, nor did it have any of the pencil notations that appear on appellants'

exhibit No. 7. He stated on cross-examination that he could not say whether or not he read the deed of trust before it was executed. He had been instructed by Mr. North of the firm of Gibson, Dunn and Crutcher to be extremely careful that everything was done just right, and while he could not say that the deed of trust produced in evidence by respondent was in the identical condition that the instrument was in when it was executed and acknowledged in his presence he reiterated the statement that there was no pencil writing on that instrument at the time it was executed. R. L. North, a witness for respondent, testified that he was an attorney and was associated with Gibson, Dunn and Crutcher of Los Angeles, and that he had charge of legal matters connected with the bond issue of Ruddle Properties, Inc., and that he prepared the trust deed and other documents pertaining to the bond issue; that Landram was the attorney for said company and that witness sent him the various documents relating to the transactions; that he sent Landram the deed of trust that was executed by the Ruddle Properties, Inc.; that appellants' exhibit No. 7 was an early draft of the proposed deed of trust; but that the deed of trust that he sent Landram for execution by the Ruddle Company was a completed instrument and that the deed of trust is now in the same form it was when it was sent to Landram for execution; that the only writing with pen and ink that appears on the deed of trust is the filling in of certain dates which were placed there by witness before he sent it to Landram for execution; that a copy of this instrument was sent to the corporation commissioner a few days after its execution.

"An inspection of respondent's exhibit No. 1, which is the deed of trust executed by the Ruddle Company, shows no pencil marks nor writings with pen and ink except the aforesaid dates.

"One of the changes which appellant claims to have been made after its execution was that the deed of trust covers after acquired property. On August 4, 1922, and again on August 11th following, resolutions were passed by the board of directors of the Ruddle Company authorizing the insertion of this clause in the deed of trust and these resolutions were prepared by North.

"Allan Ruddle testified that he discovered that changes had been made in the deed of trust in 1928; that at the last named date he found a letter written by Brooks to Landram dated August 17, 1922, in which Brooks requested Landram to send his copy of the trust deed to him in order that he might substitute corrected pages which were made in the original, and that upon such substitution being made he would return it to Landram for his files. Landram made no reply to this letter. He further testified that he had a certified copy of this deed of trust made in 1924 for the purpose of securing a loan or for use in selling some of said stock.

"The trial court found that the mortgage or deed of trust was not altered in any respect after its execution on August 14, 1924. We are of the opinion that this finding is supported by substantial evidence and such being the case this finding is binding upon this court.

■ "Appellants next contend that the bonds amounting to $75,000 having been issued without the permission of the corporation commissioner are void. Supporting this contention he cites section 12 of the Corporate Securities Act of Statutes of 1917, page 679, which provides 'every security issued by any company without a permit of the Commissioner authorizing the same, then in effect, shall be void'.

"The $75,000 worth of bonds for which no permit was issued were all issued and sold by appellant Ruddle Company in 1923 and 1924 for value. None of them matured until 1926. While there is no direct evidence that the holders of these bonds took them without notice that a permit for their issuance had not been given by the corporation commissioner, yet the inference is that they took them in the usual course of trade without such notice.

"In the case of *Goodale* v. *Thorne*, 199 Cal. 307 [249 Pac. 11, 12], the court said: 'Upon proof by defendant of fraud or illegality in the inception of the note, the burden is cast upon the indorsee to show that he is an innocent holder. This the latter may do by showing that he purchased the note before maturity, or from an innocent indorsee for value, in the usual course of business. When this is done, unless the evidence shows that the note was taken by the plaintiff under circumstances creating the presumption that he knew the facts impeaching its validity, the burden is cast

upon the defendant to show, if he would defeat the plaintiff in his action, that the latter took the instrument with notice of the defendant's equity. (*Eames* v. *Crosier*, 101 Cal. 260 [35 Pac. 873].) To the same effect are the cases of *Sinkler* v. *Siljan*, 136 Cal. 356 [68 Pac. 1024]; *Bell* v. *Pleasant*, 145 Cal. 410 [78 Pac. 957, 104 Am. St. Rep. 61]; *Blockman Commercial Bank* v. *Moretti*, 177 Cal. 256 [170 Pac. 419].'

"The trustee in this case, the respondent, is merely a nominal party in this action, the real parties in interest are the owners and holders of the bonds. In the recent case of *Eberhard* v. *Pacific Southwest Loan & Mortgage Corporation*, 215 Cal. 226 [9 Pac. (2d) 302, 303], after stating that there was nothing whatever to show that plaintiffs were anything more than innocent victims of appellant, which was now seeking to profit by its own deliberate wrong, the court said:

" ' The inhibitions of the Corporate Securities Act against sales of securities to the public without permits are meant to protect the public from imposition and deception, not primarily to benefit the seller. The purchaser and the seller are in no sense *in pari delicto* where this provision is violated. The fact that the transaction may be void at the behest of the purchaser is not to allow a premium for real wrong done by the seller. The fundamental maxim that "no one can take advantage of his own wrong" (sec. 3517, Civ. Code), and other kindred principles immediately recur to the mind. The above is but a recast of the doctrine abundantly supported by authorities and applied in cases involving this very act done under similar circumstances. (See *Pollack* v. *Staunton*, 210 Cal. 656 [293 Pac. 26]; *Michell* v. *Grass Valley Gold Mines Co.*, 206 Cal. 609 [275 Pac. 418]; *Tatterson* v. *Kehrlein*, 88 Cal. App. 34 [263 Pac. 285]; *Castle* v. *Acme Ice Cream Co.*, 101 Cal. App. 94 [281 Pac. 396]; *Hemmeon* v. *Amalgamated etc. Co.*, 95 Cal. App. 400 [273 Pac. 74].)' "

The recent case of *Braunstein* v. *Title Guarantee & Trust Co.*, 216 Cal. 780 [17 Pac. (2d) 104], is to the same effect.

"So in the instant case there is no showing made that the bondholders are other than innocent victims of appellant Ruddle Company, which is now seeking to profit by its own wrong.

"We are therefore of the opinion that under the circumstances, the defense that no permit was given to sell these bonds cannot avail appellants.

"Appellants claim that the court erred in overruling their demurrers to the complaint. While they have failed to point out in their briefs the grounds upon which they rely to sustain this claim, we are of the opinion that it is without merit.

"They also claim that the trustee should have seen that the money realized from the sale of the $75,000 bonds was applied to the improvement of the mortgaged land. An examination of the deed of trust fails to show that the trustee was required to do this.

"Appellants also contend that the court had no authority to determine the priorities of the defendants' alleged liens among themselves, nor any authority to make the *nunc pro tunc* order, striking out of the judgment the clause entitling appellants Hunter, Dulin & Co., Wagner and Carlon to have their said liens foreclosed.

"In *Rowley* v. *Davis*, 169 Cal. 678 [147 Pac. 958], the court held that the conflicting claims of the defendants between themselves, in which the plaintiff was not interested, should be postponed for determination.

"In the instant case, the pleadings showed no contest of appellants between themselves as to their liens or to the priorities thereof with respect to each other, consequently there was no issue raised that gave the court the right to pass upon their liens, or priorities of same, as between themselves. Such being the case, the matters involved in the appeal from the *nunc pro tunc* order are not necessary to be discussed by reason of the modification of the judgment hereinafter made."

The only other point which requires notice is the contention of appellants that the trial court should have ordered the property sold in smaller units instead of as one parcel. The argument is based solely upon the testimony of their witness Allan Ruddle, who described the property as divided into six units of dairies, a number of orchards, vineyards and some pasture land, and gave it as his opinion that a sale of the tract as a whole would realize only fifty per cent of its value.

It may well be assumed that the trial court, in disbelieving the testimony of this witness on the issue of alteration, likewise gave it little force in drawing its conclusion on the manner of sale. However, taking such testimony at its face value, it would still fall far short of grounds for reversal. The trust indenture provided that in the event of default and foreclosure the whole of the property should be sold as one parcel and as an entirety ''unless such sale as an entirety be *impracticable* by reason of some statute or other cause''. The term ''impracticable'' means ''not practicable''; ''incapable of being performed or accomplished by the means employed or at command''. (Webster's New International Dictionary.) Respondents argue with much conviction that under the rule of *ejusdem generis,* where general words, such as ''other cause'', follow specific words which enumerate objects of one class, such as ''statute'', the general words will be construed to refer only to things of such class. (See *Matter of Petition of Johnson,* 167 Cal. 142 [138 Pac. 740]; *Smith* v. *First Nat. Bank,* 114 Okl. 293 [245 Pac. 653]; *United States* v. *Phez Co.,* 28 Fed. (2d) 106.) Under this reasoning, the impracticability would have to arise from a statute or *similar* cause. But it is unnecessary to rely upon this doctrine, for the plain meaning of the words used excludes the interpretation sought by appellants. Their argument is simply that a sale as an entirety would be unprofitable; but they do not contend that it is impossible or even difficult, and in fact, the sale actually did take place, realizing $310,000. It is by no means clear from the record that a reversal, followed by a resale in small units, each subject to individual redemption, would bring a greater return.

It follows that the trial court did not err in ordering the sale of the property as an entirety.

The judgment is modified by striking out paragraphs III, IV, V and VI of the judgment relating to the liens of Hunter, Dulin & Co., Carl T. Wagner and T. H. Carlon; and as so modified is affirmed.

Rehearing denied.