[Civ. No. 15808. First Dist., Div. One. Apr. 1, 1954.]

SANFORD P. LEWIS et al., Appellants, v. ROY WAIN-SCOTT et al., Respondents.

Dolwig, Davis & Miller for Appellants.

R. A. Rapsey and Paul DeMare for Respondents.

WOOD (Fred B.), J.—Plaintiffs Sanford P. Lewis, a veteran, and Marie R. Lewis, his wife, brought this action against Roy Wainscott and Leota Wainscott to cancel a promissory note for $2,263.22 and a deed of trust securing the note, which plaintiffs had given the Wainscotts in part payment of the purchase price of certain real property.

Plaintiffs claim that their contract to pay the amount of this note is illegal and void for the reason, asserted by them, that it was made in violation of the provisions of the Servicemen's Readjustment Act of 1944 as amended (58 Stats., ch. 268, p. 284; as amended by 59 Stats., ch. 588, p. 623).

The applicable provisions of the statute appear in title III of the act, relative to "Loans for the Purchase or Construction of Homes, Farms, and Business Property," sections 500-510;*

---

*The amendatory act amended all of Title III and became effective December 28, 1945. (See 59 Stats. 626-631; 38 U.S.C. §§ 694, 694a-694c, 694d, 694e, 694g-694j; § 510 of title III, effective date of the 1945

particularly subdivision (3) of section 501, which declared that a loan to a veteran for the purchase of a home would be guaranteed by the government if made pursuant to the provisions of title III, including the requirement ''that the price paid or to be paid by the veteran for such property or for the cost of construction, repairs, or alterations does not exceed the reasonable value thereof as determined by proper appraisal made by an appraiser designated by the Administrator.'' (59 Stats. 628.)

This and other provisions of the act were implemented by section 1500 (58 Stats. 300) which incorporated by reference certain other statutes, including section 15 of title I of chapter 3 of an act of March 20, 1933 (48 Stats. 8, 11; 38 U.S.C. § 715). Section 15 reads as follows: ''Sec. 15. Any person who shall knowingly make or cause to be made, or conspire, combine, aid, or assist in, agree to, arrange for, or in any wise procure the making or presentation of a false or fraudulent affidavit, declaration, certificate, statement, voucher, or paper, or writing purporting to be such, concerning any claim for benefits under this title, shall forfeit all rights, claims, and benefits under this title, and, in addition to any and all other penalties imposed by law, shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not more than $1,000 or imprisonment for not more than one year, or both.'' (48 Stats. 11.) This incorporation by reference is fully effective. (*Young* v. *United States*, 178 F.2d 78, 80.)

These provisions were violated. The property was appraised at $3,000 by the Veterans Administration, yet plaintiffs agreed to pay in excess thereof the amount evidenced by the note in suit. Plaintiff Sanford Lewis and one Vern Bybee, a real estate broker or agent with whom plaintiffs dealt, managed the transaction and were well aware of the violation. The defendants had no actual knowledge of any facts which might have informed them or have put them upon notice that the statute was being violated. Plaintiffs claim, however, that Vern Bybee acted as defendants' agent and that his knowledge

amendment, apparently has not been codified in the U.S.C. The text of § 510 appears in a note appended to 38 U.S.C. 694.)

The transaction here involved occurred in April, 1947. Section 503A of said title III (38 U.S.C. § 694c-*l*), giving the veteran an action for damages against a person who ''knowingly makes, effects, or participates in a sale'' for a consideration in excess of the reasonable value of the property as determined by an official appraisal, was not enacted until September 13, 1951. (65 Stats. 320, ch. 381.)

must be imputed to them. This presents the first question upon this appeal. The second question is whether or not the facts found support the legal conclusion that the plaintiffs are not entitled to relief.

(1) *The evidence amply supports the finding that Vern Bybee was not an agent of the defendants.* The evidence is that plaintiffs, interested in acquiring a home, went to the office of Lester E. Bybee, real estate broker, at Brisbane, California. They talked with his son, Vern Bybee, who showed them several properties including this one. Vern told them that a Mrs. Johnson owned this property, and introduced them to her. They agreed upon a price, $5,250, and paid a deposit of $85. Mrs. Johnson was in possession under a contract of purchase from the defendants. Plaintiffs then made application to a bank for a federally guaranteed loan under the Servicemen's Readjustment Act. The Veterans Administration appraised the property as reasonably worth $3,000 and the bank informed Vern Bybee that a loan would not be made unless the sale price were reduced to $3,000. Vern then made out a new deposit receipt (showing $3,000 as the full consideration) which plaintiffs signed as purchaser and Mrs. Johnson signed as seller.

Meanwhile, Lester Bybee wrote the defendants, who live at Paradise, Butte County, telling them Mrs. Johnson wished to sell and that he, Bybee, had a party interested in the place and asking defendants' permission to release Johnson's interest to the plaintiffs which consent was given, conditioned upon receiving $2,000 cash and a deed of trust or first mortgage for $2,250. Later, Bybee wrote them he had an assignment from Mrs. Johnson to the defendants and sent them a deed conveying the property to plaintiffs, which they signed and returned to him. In setting up the escrow with a title company, Mrs. Johnson signed as seller and Lester E. Bybee signed for the buyer.

In all of this, plaintiffs had contact only with Vern Bybee and Mrs. Johnson, not with the defendants. Defendant Roy Wainscott testified that he had no participation in the transaction other than as herein stated; that he did not learn that his was a second mortgage until some time after the sale was consummated, he having agreed only to a first mortgage, and having received from Bybee a fire insurance policy insuring the plaintiffs, with a rider, signed by Lester E. Bybee as agent for the insurer, insuring defendants' interest as "first mortgagee"; that Bybee did not represent the de-

fendants in this transaction with the plaintiffs; Bybee did not mention the F.H.A. loan, nor did he discuss a G.I. loan; defendants did not know that plaintiff Sanford Lewis was a veteran; Bybee said nothing about the terms under which plaintiffs could buy the property, he merely said it would take a little time for them to get the necessary down payment; defendants knew nothing of any money being raised to pay Mrs. Johnson, had no knowledge of what the Johnsons and the plaintiffs were doing for themselves, did not know that the bank loaned $3,000; his original sale to Mrs. Johnson was for about $5,000; she had paid $500 down and was paying principal and interest at the rate of $40 a month, was about three months behind at the time of the second sale; Roy knew only that defendants were to get $2,000 cash and a deed of trust or first mortgage for $2,250; did not know whether Mrs. Johnson was to get her money back when she sold out; nor did he know that Mr. Bybee had deducted $262.50 as commission. It appears that Bybee's commission was paid out of the $3,000 bank loan pursuant to the escrow instructions signed by Mrs. Johnson. Her instructions also directed that $2,120 of that loan be paid to the defendants. A statement by the lending bank indicates that the sum of $262.50 was paid or payable to Lester E. Bybee, $2,116.70 to the defendants, $3.30 for revenue stamps, and $617.50 to Mrs. Johnson.

Plaintiffs, in support of their claim that the evidence shows, as a matter of law, that Bybee acted as defendants' agent in the sale to the plaintiffs, invoke this testimony: Upon the original sale to Johnson, Bybee conducted the negotiations for the defendants; Bybee had been collecting Johnson's installment payments and had notified defendants that Johnson was three months in arrears; that when Bybee told them that plaintiffs were interested, defendants told Bybee they were willing to sell and told him the price; that they never talked with Mrs. Johnson concerning the last transaction; they handled all their transactions relating to the property through Mr. Bybee. This evidence at most produced a conflict on this question of fact, which the trial judge, who saw and heard the witnesses and weighed the evidence, resolved against the plaintiffs and in favor of the defendants.

Plaintiffs further claim that defendants have ratified this illegal transaction by accepting its benefits and taking steps to foreclose the deed of trust given them to secure the note

in suit. The answer to this contention is that Bybee was not their agent and did not purport to act as their agent in conducting the questioned transaction. There is, therefore, no basis for an implied ratification of his asserted illegal act. (See *Watkins* v. *Clemmer*, 129 Cal.App. 567, 570-573 [19 P.2d 303] ; *Jones* v. *Bank of America*, 49 Cal.App.2d 115, 122 [121 P.2d 94], petition for hearing by Supreme Court denied.) Moreover, there were other innocent parties to the transaction, the bank which made the $3,000 loan, secured by a first deed of trust or mortgage given by the plaintiffs upon the very same property, and the governmental agency that guaranteed the loan. As a practical matter, the defendants, likewise innocent parties, had no real power of election between rescinding the sale or retaining plaintiffs' note and enforcing the security which was actually furnished them. Under such circumstances, a reviewing court could not hold as a matter of law that the trial court erroneously found that there was no such ratification of the transaction as would convert defendants into participating actors in the violation of the statute.

■ (2) *The findings support the legal conclusion that plaintiffs are not entitled to relief.*

The court found that, for the sole purpose of inducing a Veterans Administration guaranteed loan, plaintiffs entered into an instrument in writing for the purchase and sale of the property for the stated sum of $3,000, that plaintiffs were aware and had knowledge of the illegality of the transaction which gave rise to the note and deed of trust in suit, that defendants did not have any knowledge of a veteran's loan, nor of any transaction under the statute for financing the purchase of the property, and that Vern Bybee was not the agent of the defendants.

The court concluded therefrom that plaintiffs are entitled to no relief. That is the correct conclusion.

It would be strange, indeed, if a willfully deliberate and scheming violator of the statute could cancel his promise to pay the remainder (a very substantial remainder) of the purchase price and retain the property at the expense of an innocent seller who acted in good faith with no knowledge of any fact which could possibly have put him upon inquiry concerning the legality of the transaction.

Congress could not have intended any such untoward and tragic result when it enacted this statute into law for the aid and protection of veterans. ■ It did impose penalties upon any person who "knowingly" makes or causes to be

made or aids in or procures the making or presentation of a "false or fraudulent affidavit, declaration, . . . statement, . . . or paper . . . concerning any claim for benefits under" the statute. From that there is inferred an intent to proscribe as illegal a contract made in violation of the statute, such as a contract to pay a vendor or builder a sum in excess of the "reasonable value" of the property "as determined by proper appraisal made by an appraiser designated by the Administrator," at least to the extent of the excess. (*Young* v. *Hampton,* 36 Cal.2d 799, 802-804 [228 P.2d 1, 19 A.L.R.2d 830]; *Pitts* v. *Highland Const. Co.,* 115 Cal.App.2d 206, 209-210 [252 P.2d 14]; *Sattler* v. *Van Natta,* 120 Cal.App.2d 349, 352 [260 P.2d 982]. See also *Rosenblum* v. *Corodas,* 119 Cal.App.2d 802 [260 P.2d 151].)

In the cases last cited it was also held that although a veteran might be an active participant in knowingly evading and violating the statute, the law would accord him a remedy (such as cancellation of or denial of recovery upon a note evidencing his promise to pay the excess amount), because the statute implements a policy of affording the protection of the law to those whom the federal loan statutes are designed to benefit. However, it also appears in each of those cases that the vendor or the builder against whom such a remedy was accorded the veteran was a "knowing" violator of the statute. In striking contrast, in the instant case, the defendant vendors acted in entire good faith. They were utterly ignorant of any fact indicative of a violation or possible violation of this or any other law. Here, a different principle comes into play.

"Where the illegality of a bargain is due to . . . facts of which one party is justifiably ignorant and the other party is not, . . . the illegality does not preclude recovery by the ignorant party of compensation for any performance rendered while he is still justifiably ignorant, or for losses incurred or gains prevented by non-performance of the bargain." (Rest., Contracts, § 599.) Corbin states it in these words: "If a bargain is illegal only because of the existence of facts of which one of the parties is justifiably ignorant, the innocent party is not deprived of all remedy," citing cases from numerous jurisdictions. (6 Corbin on Contracts, 1066, § 1538.) It is a principle recognized in California. (See *Hilbert* v. *Kundicoff,* 204 Cal. 485, 486 [268 P. 905]; *Security-First Nat. Bank* v. *J. G. Ruddle Properties, Inc.,* 218 Cal. 435, 440-442

[23 P.2d 1016]; *Hemmeon* v. *Amalgamated C. Mines Co.*, 95 Cal.App. 400, 401-402 [273 P. 74]; *Garnette* v. *Mankel*, 71 Cal.App.2d 783, 786-787 [163 P.2d 466]; 6 Cal.Jur. 157, Contracts, § 109.)

This principle, applied to the facts found by the trial court, calls for legal recognition of the promissory note and the deed of trust given to secure it. No other remedy seems feasible for the defendants. They could not be required to rescind the sale and take their property back. There are two other innocent persons to be protected, the bank that made the $3,000 loan and the governmental agency that guaranteed the loan.

The decisions which plaintiffs invoke are not applicable to the situation which here obtains. For example, *Elmers* v. *Shapiro*, 91 Cal.App.2d 741 [205 P.2d 1052], involved a different statute, the Veterans' Emergency Housing Act of 1946, which, in giving the veteran a civil remedy to recover the amount paid in excess of the ceiling price, omitted the element of willfulness, in contrast to making willfulness a necessary element when imposing criminal penalties. (See p. 752 of 91 Cal.App.2d.) Even more significant, the defendant building contractor there involved acted with full knowledge of the ceiling price which the contract exceeded. He was no innocent nonparticipant in the violation as are the defendants in the case now before us. These defendants, like the bondholders mentioned in *Security-First Nat. Bank* v. *J. G. Ruddle Properties, Inc., supra,* 218 Cal. 435, are "innocent victims" of the plaintiffs herein who are "now seeking to profit" by their "own wrong." (P. 441.)

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.