[Civ. No. 22245.   Second Dist., Div. One.   Nov. 6, 1957.]

JAMES R. COLE et al., Respondents, v. ERNEST AMES et al., Appellants.

A. James Ayers and Benjamin D. Brown for Appellants.

Miller & Maddox and Loren Miller for Respondents.

WHITE, P. J.—The defendants, Ernest Ames and his wife, appeal from a judgment that "the defendant Ernest Ames surrender to the plaintiffs the note dated February 12, 1948, for $3,000.00, secured by deed of trust, signed and executed at Los Angeles, California, by James R. Cole and Eulalie Cole, and payable to Ernest Ames, and that the deed of trust given to secure the same, . . . be, and the same hereby is, cancelled and annulled, and rendered wholly void and of no force and effect, and that the cloud created by the said deed of trust and note upon the title of the plaintiffs' be, and the same hereby is, removed . . . ; and defendant Ernest Ames is hereby ordered and directed to execute a reconveyance of the said deed of trust."

Respondent James R. Cole, a veteran of World War II, and his wife, purchased a home from one Arnold in 1948. The Bank of America agreed to and did make a "G. I. Loan" of $10,000 evidenced by respondents' note secured by a first deed of trust. The purchase was "financed under the G. I. Bill," a "G. I. Loan" secured by Fairchild, the real estate agent of the owner. Respondents agreed to and did pay $1,600 plus escrow charges in cash. The purchase price shown in the Escrow File is $11,600. The $3,000 note and second deed of trust referred to in the above quoted judgment (although dated and delivered to appellants by the realtor after the close and outside of the escrow) were signed at the same time as the $10,000 note and trust deed in favor of the bank, both were then left by appellants with Fairchild, and they were "a part of the purchase price of the property."

The deal was managed by Fairchild, representing Arnold, under whose instructions the $3,000 note and trust deed were made in favor of defendant Ames in payment of Arnold's debt to Ames. Respondents had never owned real property and knew nothing about the law. Appellants and respondents had no dealings with each other. Fairchild represented to respondents that the deal had been approved by the Veterans Administration. On cross-examination, respondent James R. Cole was asked, "Now, when did you first become familiar with the fact that there was some law governing the placing of a second trust deed on property in which a Government loan had been obtained?" He replied that when respondents had missed a payment and appellants had threat-

ened foreclosure about January or February, 1949, a "real estate friend" had advised him to see the Veterans Administration, and the Veterans Administration had sent him to see the United States Attorney. He was then asked, "And did the U. S. Attorney advise you at that time as to whether this transaction was proper or legal or not?" His answer was that "Mr. Steel told me that that was strictly illegal and to stop payment on it, and I did."

The instant action was filed in February, 1955. By their answer, appellants pleaded that the action was barred by the limitations of the following sections of the Code of Civil Procedure: Section 338, subdivision 4, providing that an action for relief on the ground of fraud must be brought within three years after the discovery of the facts constituting the fraud; section 343, providing that an action seeking "relief not hereinbefore provided for"—cancellation of the note and trust deed because of illegality—is barred in four years; and section 318, providing that an action to adjudicate ownership of real property is barred in five years after knowledge of the adverse claims.

Appellants rely upon the cited sections of the Code of Civil Procedure, *supra*, and the decision in *Moss* v. *Moss*, 20 Cal.2d 640, 645 [128 P.2d 526, 141 A.L.R. 1422]. The Moss decision does not determine the issue in the instant action. Whether the statute of limitations has run, depends upon the nature of the action. A scrutiny of the allegations of the complaint and the character of the relief sought discloses that the gravamen of the instant action is to remove a cloud and quiet respondents' title to real property. The alleged fraud and illegality of the transaction are merely incidental and not determinative of the nature of the action. A party is not required to take action against a hostile claim which is not of a nature to ripen into a valid adverse title. An action to remove or cancel an adverse claim such as that of appellants in the instant action is not barred by lapse of time until the illegal or voidable claim is asserted in some manner. (*Secret Valley Land Co.* v. *Perry*, 187 Cal. 420, 425-426 [202 P. 449]; *Newport* v. *Hatton*, 195 Cal. 132, 145-146 [231 P. 987].) The trial court correctly held that the instant action was not barred by the statute of limitations.

No claim of laches is made by appellants and no showing is made of any disadvantage to appellants resulting from respondents' delay in bringing the instant action. Lapse of time alone does not bar a suit to quiet title. (*Carlson* v.

*Lindauer,* 119 Cal.App.2d 292, 310 [259 P.2d 925]; *Kirkpatrick* v. *Tapo Oil Co.,* 144 Cal.App.2d 404, 412 [301 P.2d 274].) ██ Respondents, who live upon the property and have made no payments on the trust deed note since learning of its alleged invalidity, have a continuing right to the aid of a court of equity to determine the nature and effect of the adverse claim in an action brought by or against them. (44 Am.Jur. 47; 74 C.J.S. 69; 22 Cal.Jur. 123, and cases there cited.)

██ Appellants contend that "[i]t is a fatal and material variance where fraud is alleged but something else is proven.", and on oral argument state that, the action was not tried as one to quiet title and that quieting respondents' title was a mere afterthought included in the judgment.

We are persuaded however, that the action was tried and decided as a quiet title action and that, as in *Colbert* v. *Colbert,* 28 Cal.2d 276, 281 [169 P.2d 633], "there is no variance between the allegations in the pleading and the proof which misled the appellant to his prejudice; thus the court was justified in finding according to the evidence in spite of the alleged limited scope of the pleading." Unlike the case of *Schirmer* v. *Drexler,* 134 Cal. 134, 139 [66 P. 180], and other cases relied upon by appellant, the facts proved and found in the instant action are related to the issues framed by the pleadings and none are in direct conflict with the allegations of the complaint.

" 'No variance between the allegation in a pleading and the proof is to be deemed material, unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits.' (Code Civ. Proc., § 469.) Where a matter has been treated as in issue at the trial and a finding made upon that issue, the complaint becomes immaterial. (*Boro* v. *Ruzich,* 58 Cal.App.2d 535 [137 P.2d 51].)" (*Thompson* v. *Hickman,* 89 Cal.App.2d 356, 358 [200 P.2d 893].) Appellants claim no misunderstanding of the issues to be tried in the instant action. Also, "the trial court's judgment must be affirmed if the findings, supported by the evidence, are sufficient to warrant the relief granted on any legal theory." (*Sears* v. *Rule,* 27 Cal.2d 131, 140-141 [163 P.2d 443].)

It is appellants' claim that since they did not actively participate in procuring a veteran's loan in violation of federal law, and the federal guarantee of a portion of the loan made by the bank was entirely separate from and covered no part

of the note and trust deed in their favor, any illegality of such procurement should not taint their note and trust deed, or prevent their collection of the balance due them as shown by their cross-complaint.

While, in *Young* v. *Hampton, infra,* both parties, the plaintiff contractor and the defendant buyers, were fully aware of the illegality of the transaction, and in the instant action neither the respondents or the appellants were cognizant of such violation, we are of the opinion that such distinction is not sufficient reason for enforcing the note and trust deed for such illegal excess over and above the purchase price represented to the Veterans Administration in order to procure federal guarantee of a portion of the loan and to the bank in order to procure the loan.

In *Lewis* v. *Wainscott,* 124 Cal.App.2d 345 [268 P.2d 835], relied upon by appellants, the innocent parties were the bank, the Veterans Administration and the holder of the questioned note and trust deed, who had been induced by the real estate agent for the veteran to transfer his real property to the veteran without other consideration. In the instant action there is an important difference. Here the appellants gave up and respondents received from them nothing of value in consideration for the note and trust deed. Neither had ever seen or heard of the other before. The seller who received the illegal excessive price (represented by the note and second trust deed in favor of appellants) had it so made in performance of his agreement with appellants for the sharing of his profits on several deals including the one with respondents.

"The statute was intended solely to aid the veteran in the establishment of a home. Any benefit to a contractor was incidental. However, if a secret contract for an amount in excess of the appraised value may be exacted from a veteran, the purpose of the act is defeated." (*Young* v. *Hampton,* 36 Cal.2d 799, 806 [228 P.2d 1, 19 A.L.R.2d 830].)

The facts of the instant action do not justify the enforcement of a note and trust deed for the illegal excess of the purchase price over the appraisal by the Veterans Administration.

Appellants urge that the obligation of the wife is "several and divisible from the husband and nothing was illegal as to her interest; hence, her promise is enforceable." To that argument, respondents reply that since the property is held in joint tenancy "with its essential unity of title," the veteran alone had the right to lift the lien from the property;

and that "to permit the wife to be held under circumstances such as these would nullify the statute." In support of their respective positions in this regard the parties cite no authorities and our research has found no case in point. The veterans' wives were parties to the cases of *Young* v. *Hampton, supra, Lewis* v. *Wainscott, supra, Rosenblum* v. *Corodas,* 119 Cal.App.2d 802 [260 P.2d 151], and *Sattler* v. *Van Natta,* 120 Cal.App.2d 349 [260 P.2d 982], but no issue was raised concerning them.

The question is whether a second trust deed for an amount in excess of a "proper appraisal," executed by a veteran and his wife who are joint tenants, is illegal and unenforceable as to all, or half only, of the amount of such excess.

The facts of the Young, Lewis, Rosenblum and Sattler cases, *supra,* as well as the facts now engaging our attention, indicate that the federal guaranties were made in the permitted proportions of the full amount of the loan, not the prescribed portion of half of the loan. 38 U.S.C.A. § 694 provides that such guaranty shall not exceed 50 per cent of the amount of the loan or $4,000, whichever is smaller. In the instant action the loan procured from the bank was $10,000 and the guaranty $4,000. If the guaranty was to apply to one-half only of the property and one-half only of the loan, it should not have exceeded $2,500.

"A joint tenancy is one estate and in it the rights of the spouses are identical and coextensive." (*Siberell* v. *Siberell,* 214 Cal. 767, 773 [7 P.2d 1003].)     As expressed by Lord Coke, "It appeareth . . . that joyntenants have the lands by one joint title and in one right . . .; which is the reason, that joyntenants have one joint freehold . . . ." In *Reina* v. *Erassarret,* 90 Cal.App.2d 418, 422 [203 P.2d 72, 7 A.L.R.2d 1309], the court discusses the nature of joint tenancy and says "that title does not vest in the survivor upon the death of the cotenant nor does it descend to him from such cotenant because it has already vested in him by, and at the time of, the original grant; and that the interest of two joint tenants is not only equal or similar but also one and the same."

While, as urged by appellants, the statement in section 694 that the term "veteran" shall include "the unremarried widow" of a veteran might be construed as excluding from the protection of the act the wife of a veteran, we are persuaded that the correct construction is

the practical construction acted upon by the Veterans Administration and the banks in granting and accepting federal guaranties of loans made upon properties owned in joint tenancy by a veteran and his wife as though the title stood in the name of the veteran alone. To hold the obligation of the veteran's wife to pay an amount in excess of the fair value or "proper appraisal" legal and enforceable by foreclosure of a trust deed upon the home of the veteran and his family would not give to the veteran the assistance in procuring and protection in maintaining a home as intended by the act. Therefore, the whole note and trust deed for an amount in excess of a "proper appraisal" is invalid.

In the instant action, it was adjudged that the $3,000 note and trust deed securing payment thereof, executed by respondents as part of the purchase price for their home, are invalid and unenforceable under the provisions of 38 U.S.C.A. § 694 (as it was prior to the amendment thereof in 1956), that a loan made to a veteran to be used for purchasing a dwelling to be occupied as his home is guaranteed upon certain conditions, including the condition that "the price paid or to be paid . . . does not exceed the reasonable value thereof as determined by proper appraisal made by an appraiser designated by the Administrator," and the decision in *Young* v. *Hampton,* 36 Cal.2d 799, 805-806 [228 P.2d 1, 19 A.L.R.2d 830], that, when such federal guarantee of a loan to a veteran is procured, an agreement to pay an amount in excess of such appraisal is illegal and unenforceable.

Appellants contend that the judgment cannot be sustained for the reason that no evidence properly before the court tends to prove any "proper appraisal" in the instant action to which said section 694 is applicable.

In this regard appellants urge as reversible error the admission, over their objection, of Exhibit 4, which consists of four documents from the home loan file of the Bank of America, to wit:

(1) A printed form entitled "Veterans Administration Appraisal Report," bearing a penciled map and plan, photographs of a house, and typewritten insertions showing the lender to be the Bank of America; the veteran to be a stranger to this action; the property to be the same as that described in the complaint and cross-complaint in the instant action; bearing the purported signature of Ernest Adams under the printed words "Appraiser's Signature," the printed statement that the appraiser estimates the "Reasonable Value"

16

"as is", and the typewritten figure $11,600.00; and showing the date to be November 7, 1947.

(2) A printed form entitled "Home Loan Report" which bears a carbon copy of typewritten insertions therein showing veteran's name to be James R. Cole; amount of loan $10,000; title to the property described in the purported appraisal to be fee simple in respondents as joint tenants; the total to be paid to the contractor $11,600; other expenses $220.00; that the price to be paid by the veteran does not exceed the value thereof as determined by proper appraisal dated November 7, 1947, made by appraiser Ernest Adams; and that the veteran, James R. Cole, over his signature and over the date February 14, 1948, requests "the Administrator to endorse my honorable discharge or certificate of eligibility for $4,000.00 of the guarantee benefit available to me," said form also bearing the purported signature of Harry Christensen, as manager of the 25th and Central Branch Number 354 of the Bank of America, and having the portion thereof "For Use by Veterans Administration" left entirely blank.

(3) Title Insurance and Trust Company's Policy Number 2769195 dated February 5, 1948, insuring James R. Cole, Eulalie Cole and Bank of America National Trust and Savings Association, a corporation, in the sum of $11,600, showing title to the same property vested in James R. Cole and Eulalie Cole, his wife, as joint tenants, and showing said property to be subject to only one trust deed dated January 23, 1948, as security for indebtedness of $10,000 in favor of the Bank of America National Trust and Savings Association, a corporation.

(4) Photostatic copy (which appellants stipulated should have the same force and effect, if any, as would the original) of a deed of trust note for $10,000, dated January 23, 1948, signed by James R. and Eulalie Cole, in favor of the Bank of America National Trust & Savings Association, a national banking corporation; to which is appended "Loan Guaranty Certificate" dated March 12, 1948, for Veterans Administration Loan No. L-HG 72463 Calif LA, to lending institution Bank of America, for loan of $10,000 dated January 23, 1948, to veteran James R. Cole, Serial No. 37 369 105 Army "Subject to the Servicemen's Readjustment Act of 1944, as amended, Public Law 268, 79th Congress, and the regulations issued thereunder to the date of this certificate, 40 percent of the indebtedness outstanding from time to time under the loan identified above is hereby guaranteed," over the printed

words "Administrator of Veterans Affairs by" and the purported signature of Jesse E. . . . (illegible and not mentioned in the record).

The portion of the record referred to by appellants in support of their contention reveals that one John T. Mack, assistant cashier of the Bank of America's 25th and Central Branch, produced the file of the bank from which said documents were taken; that they were the records of his bank, kept in the usual course of business, indicating that the transaction was "a Veterans' guaranteed loan," and a "Federal guaranteed loan." Objection was made to each of these documents "as no foundation laid." The witness then testified that these documents are kept in the regular course of business at the bank; that he is custodian of the file and an officer at the 25th and Central Branch of the Bank; that he was not working at that branch when the loan was made; and that these "are regular documents." Appellants' counsel was asked to and did look at the documents, particularly at the legal description, after which he said, "Apparently it relates to this property, I guess." Respondents again offered the documents in evidence. Appellants again objected "as no foundation having been laid properly" and the objection was overruled.

In support of their claim that the admission of that evidence constituted prejudicial error, appellants cite and rely upon section 1953f of the Code of Civil Procedure; *Pruett* v. *Burr,* 118 Cal.App.2d 188 [257 P.2d 690]; and *Luthringer* v. *Moore,* 31 Cal.2d 489 [190 P.2d 1].

Said section 1953f provides: "A record of an act, condition or event, shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."

The purpose of this act is to enlarge the exception to the hearsay rule, to eliminate the necessity of calling as a witness each person who had personal knowledge of the facts recorded, and to substitute the record of the transaction or event. (*Loper* v. *Morrison,* 23 Cal.2d 600, 608 [145 P.2d 1].)

We do not regard the cases of *Pruett* v. *Burr, supra,* and *Luthringer* v. *Moore, supra,* as authority for appellants' contention herein. In the Pruett case the questioned documents

were produced from the files of an Agricultural Commissioner who was a witness at the trial. They consisted of a copy of a letter and memo received by the witness from the Bureau of Chemistry of the State Department of agriculture. The court there held that the placing of correspondence in a business file did not necessarily make it admissible in evidence under the business records act; and that the copies of the letter and memo there in question were not business records of the commissioner who received and filed them, although similar copies might have been admissible if properly introduced from the file of the Department of Agriculture. Where there is any basis for the exercise of the trial court's discretion in determining that a proper foundation has been proved for admission of such evidence, an appellate court will not disturb such decision, but under the circumstances there shown the court held that "the question was not debatable."

*Luthringer* v. *Moore, supra,* holds that it was not error to exclude hospital records where the sole foundation laid was the testimony of the custodian that they were day to day records of the patients in the hospital, including plaintiff while he was confined after his accident, and there was no evidence as to the mode of preparation.

In the instant action, appellants assert that the federal law relating to veterans' loans is based on an appraisal being made by a duly appointed appraiser; and that the only evidence of these facts is contained in certain of the above mentioned documents.

The foundation for receipt into evidence of the Veterans Administration appraisal of the property was laid as follows: John T. Mack, as heretofore indicated, testified that he was manager of the branch bank involved. Then the following ensued:

"Q. [By Mr. Maddox, attorney for respondents.] Do you have in your possession records of a loan made about January of 1948 to Mr. James Cole and Eulalie Cole and secured by a deed of trust?

"A. I believe you have the note there in the file. I have the other documents, however, yes.

"Q. We have here a photostatic copy. Are those records the official records of your bank?

"A. Yes, they are.

"Q. Kept in the usual course of business? A. Yes.

"Q. What is your position with the bank?

"A. Assistant cashier.

"Q. Do your records indicate as to what type of loan this was?

"A. Yes, it's a Veterans' guaranteed loan.

"Q. A Federal guaranteed loan? A. Yes.

"Q. In connection with that was there, do the records indicate whether or not there was a Veterans Administration appraisal of the property on which this loan was made?

"A. Yes, I have the Veterans Administration appraisal here.

"Q. What does the appraisal show as the appraised value of the property?

"MR. BROWN [Attorney for appellants] : I object to that as not being the best evidence.

"THE COURT: Do you wish to introduce the appraisal? Is that all you want out of that file, Mr. Maddox?

"MR. MADDOX: I want the appraisal, the home loan report, and the deed of trust—I think I want all of these documents. In fact I went over this with Mr. Mack and picked out the documents that we needed.

"THE COURT: Well, may I suggest you tell Mr. Brown the documents that you want to use, and then you can just offer those documents, and we will save time.

"MR. MADDOX: These documents may be left under the same arrangement as the other?

"THE COURT: Yes.

"MR. MADDOX: I'd like to have these documents marked as Plaintiffs' next in order.

"THE COURT: Marked or offered?

"MR. MADDOX: I'd like to have them offered.

"MR. BROWN: Objected to as no proper foundation, except I have no objection as to the form of one, being a photostat— one of them is a photostat of the original document—but I object to all of them as no foundation laid.

"THE COURT: Well, lay the foundation then, Mr. Maddox.

"MR. MADDOX: Your Honor, I am inclined to think that these have been authenticated as documents kept in the regular course of business at the bank, he is an officer of the bank—

"THE COURT: Well, to make sure ask him.

"Q. BY MR. MADDOX: Are these documents kept in the regular course of business at the bank?

"A. Yes, they are.

"Q. And you are an officer at the 25th and Central branch, are you not? A. Yes.

"Q. These are regular documents, are they not?

"A. Yes, they are regular documents.

"THE COURT: No question about their being the documents that pertain to the property in this case, is there, Mr. Brown?

"MR. BROWN: Was your Honor talking to me?

"THE COURT: Yes.

"MR. BROWN: I don't know.

"THE COURT: Well, you can look at them.

"MR. BROWN: I assume that they perhaps do relate to it.

"THE COURT: Well, that's why I asked Mr. Maddox to show them to you.

"MR. MADDOX: Look at the legal description.

(Mr. Maddox hands the documents to Mr. Brown who examines them.)

"MR. BROWN: Apparently it relates to this property, I guess.

"MR. MADDOX: I again offer them, your Honor.

"MR. BROWN: I again object as no foundation having been laid properly.

"THE COURT: They may be received and marked as Plaintiffs' 4.''

We are satisfied that the copy of the Veterans Loan appraisal contained in the file and kept in the regular course of business by Bank of America was sufficient to give rise to an opinion by the court that, in the language of section 1953f of the Code of Civil Procedure, "the sources of information, method and time of preparation were such as to justify its admission." In any event, in the case at bar, the question was debatable. (*Pruett* v. *Burr, supra,* 203.) Furthermore, the error, if any, becomes immaterial as to the matter of the so-called G. I. appraisal in the light of the inferences to be drawn from testimony of the witness, Wesley J. Fairchild, the real estate broker, who testified, without objection and on cross-examination by appellants' counsel, as follows:

"Q. Well, was there any conversation as to why they were having to sign two different trust deeds? A. Yes.

"Q. All right, what was said? What did you tell them?

"A. I can't quote what I said. I might say in essence what was said.

"Q. Well, now, what in essence did you tell them?

"A. I told them that the seller refused to sell the property for the appraisal that had been given by the Veterans Admin-

istration's appraiser, and that they would have to pay, if they got the property, over and above it, which the seller was agreeable to taking a second trust deed for.

"Q. And did you tell them that they weren't to let the bank or the Veterans Administration know about this?

"A. I don't recall telling them that, no, but I do know that it was brought out that they were explained that we were not supposed to pay more than the Veterans Administration appraisal."

The witness further testified:

"Q. [By Mr. Brown]: Do you remember anything else that you might have told them at that time about having to get around the Veterans Administration requirements and the laws connected with it?

"A. Nothing more than the fact that this trust deed could not be handled through the escrow. As far as the escrow was concerned the property would have to show as being sold for the amount that the Veterans' appraiser appraised it for."

There is no showing that the admission into evidence of the 3rd and 4th parts of Exhibit 4, the policy of title insurance and the loan guaranty certificate (attached to the deed of trust note signed by respondents in favor of the bank) was at all prejudicial.

We find no reversible error in the ruling of the trial court. The evidence supports the findings and the latter support the judgment which must therefore be affirmed.

It is so ordered.

Fourt, J., and Drapeau, J.,* concurred.

A petition for a rehearing was denied December 3, 1957.

---

*Assigned by Chairman of Judicial Council.